**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| |
|---|
| TERI TUCKER,<br><br>               Plaintiff,<br><br> v.<br><br>AMERICAN INTERNATIONAL GROUP,<br>INC.; NATIONAL UNION FIRE<br>INSURANCE COMPANY OF<br>PITTSBURGH, PA., A SUBSIDIARY OF<br>AMERICAN INTERNATIONAL GROUP,<br>INC.,<br><br>               Defendants. |

3:09 - CV - 1499 (CSH)

**RULING ON DEFENDANTS' MOTION TO BIFURCATE AND STAY, OR
ALTERNATIVELY FOR PROTECTIVE ORDER, AND MOTION FOR RULE 16(a)
CONFERENCE**

HAIGHT, Senior District Judge:

This vigorously contested diversity action pits plaintiff, a former employee of a newspaper publisher, against defendant insurance companies which issued that employer an employment practice liability policy. Defendants now move (Doc. #88) for an order bifurcating certain claims and a partial stay of discovery or, in the alternative, for a protective order and a conference under Fed. R. Civ. P. 16(a).

This opinion resolves that motion. At the outset, however, the Court is constrained to note with regret the distressing and toxic level of dissension between counsel for the parties, conduct which wastes time and obstructs that search for justice which is the goal of all civil litigation.

Specifically, both plaintiff's and defendants' counsel have had constant and

1

incomprehensible difficulty in communicating and engaging in the discovery process. Counsel have routinely sparred in depositions and repeatedly accused each other of unprofessional and even unethical conduct.[1]  Motions to compel and/or for protective orders have been filed on numerous occasions.  Doc. #52, 56, 75, 101, 102, 108, 120.  None of this maneuvering serves to expedite the resolution of plaintiff's claims in this action or defendants' defenses to them.  Rather, the contentiousness pervading discovery has resulted in unnecessary delay and additional cost to all parties.

While it should not be necessary for a court to caution experienced and able trial attorneys such as those in this case, nonetheless this Court herewith advises counsel that henceforth they are expected and required to act responsibly as members of the Bar and officers of the Court: to recall that it is incumbent upon them to behave as professionals at all times, to address each other in a civil manner, avoid unnecessary or harassing motion practice, and to cooperate fully in the completion of all permitted discovery.  The Court has well-established powers with which to deal with litigation abuse.[2]

---

[1]For example, defendants accuse plaintiff of "conduct[ing] this litigation like a blind fighter swinging wildly hoping to sooner or later hit something or someone." Doc. #88-1, p. 3, para. 2.  Defendants further allege that plaintiff "has wandered from a proper path of discovery," as "illuminated by her treatment of non-parties." *Id.*, p. 5.  Plaintiff, on the other hand, argues that defendants' counsel has violated Rule 3.3(a)(1) and (2) of the Professional Rules of Conduct by knowingly failing to disclose applicable authority to the Court.  Doc. #91-1, p. 3 n.1.  Most recently plaintiff has moved for default and/or sanctions against defendants for "for providing knowingly false discovery responses" and "continued discovery abuses." Doc. #102.  Such accusations, including unseemly attacks *ad hominem*, have created a notable and unnecessary climate of hostility in these proceedings.

[2]As the Second Circuit explained in *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 135-36 (2d Cir. 1998):

"[F]ederal courts have "well-acknowledged inherent power to levy sanctions in

2

## I.   **BACKGROUND**

Having delivered these cautionary and, one hopes, curative observations and directions, I gladly return to the merits of the present motion.

The factual background of the case is  recounted in two prior opinions of the Court, reported at 728 F.Supp.2d 114 (D. Conn. 2010) and 745 F.Supp. 53 (D. Conn. 2010), familiarity with which is assumed.  For present purposes, it is sufficient to say that plaintiff Teri Tucker ("plaintiff" or "Tucker") seeks to recover damages from her former employer's insurers, defendants American International Group, Inc. ("AIG") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), arising from her unlawful discharge in 2003, pursuant to an employment practices liability insurance policy  (herein "EPL Policy"). As set forth in her complaint, plaintiff seeks to collect from defendants a $4 million judgment in her favor entered against her employer,

---

response to abusive litigation practices" . . . *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

The court's inherent power derives from the sage acknowledgment that courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat) 204, 227, 5 L.Ed. 242 (1821)).

*See also In re Goldstein*, 430 F.3d 106, 110 (2d Cir. 2005) (*per curiam*) ("federal court possesses certain inherent powers to discipline attorneys who appear before it;" these powers include powers to police the conduct of attorneys as officers of the court and to impose sanctions for attorney misconduct) (internal quotations and citations omitted); *Sassower v. Field*, 973 F.2d 75, 80-81(2d Cir. 1992) ("The Supreme Court has made clear that a district court has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons.") (citing *Chambers*. 501 U.S. at 43).

Journal Register East ("JRE"),[3] by United States District Judge Stefan R. Underhill following a jury

trial in the Bridgeport Division of this Court. *Tucker v. Journal Register East*, Doc. # 3:06-CV-307

(SRU) (herein "*Tucker I*").[4]

Plaintiff commenced the case at bar ("*Tucker II*") in December 2009 against insurers

National Union and AIG  as the underwriters of a $5 million EPL Policy issued to JRE,  under which

plaintiff seeks to recover the $4 million judgment she recovered against JRE in her jury trial before

Judge Underhill in *Tucker I*.[5]  Specifically, plaintiff seeks compensatory and punitive damages

"caused by the defendant insurers' failure to satisfy" the judgment in her favor and "against their

insured, Journal Register Company."[6]  *Tucker II*, Doc. #1, p. 1  (¶ 1).  After obtaining the judgment

in *Tucker I*, plaintiff contended that she was a "subrogee and intended third party beneficiary under

the policy . . . who possesses contractual and statutory rights to take legal action directly against the

defendants to satisfy her judgment." *Id.*

In her *Tucker II* Complaint, plaintiff included the following claims:  breach of contract;

breach of the implied covenant of good faith and fair dealing; a claim to recover as a subrogee of the

---

[3]Journal Register East is a division of the Journal Register Company, which does business as "*The New Haven Register.*"  *Tucker I*, Doc. #1, p. 3 (¶ 9).

[4]For a full description of the prior proceedings in *Tucker I*, *see* this Court's previous Order on Defendants' Motion to Transfer (Doc. #39, Section I.A.).

[5]Tucker maintains that National Union is a subsidiary of AIG,  "a holding company which through its subsidiaries, is engaged in a broad range of insurance and insurance-related activities in the United States and abroad."  *Tucker II*, Doc. #1, p. 3 (¶ 6).

[6]Tucker has alleged that AIG denied coverage of her claims set forth in *Tucker I* in a letter dated August 18, 2008.  *Tucker II*, Doc. #1, p. 8 (¶¶ 39- 40).  In that letter, AIG  referenced a notice provision of the policy (contained in Clause 8) to conclude that no coverage existed where Journal Register had failed to advise it of Tucker's litigation until after Journal Register  received an adverse jury verdict. *Id.* (¶ 40).

Journal Register Company under Connecticut's Direct Action Statute, Conn. Gen. Stat. § 38a-321;[7]

violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat.  § 42-110a,

*et seq.*; tort of bad faith (in handling Tucker's claim and denying coverage); and equitable estoppel

(to prevent defendants "from attempting to assume the defense of Tucker's claim to attack or reduce

the amount of Tucker's judgment").[8]

Subsequent to the filing of *Tucker II*, on January 5, 2011, plaintiff entered into a settlement

agreement with JRE in *Tucker I*.   Pursuant to that settlement agreement, plaintiff effectively

received a payment of $109,457.00 in exchange for providing JRE a specific and general release of

---

[7]Connecticut's "direct action" statute, Conn. Gen. Stat. § 38a-321, captioned, " Liability of insurer under liability policy," states in relevant part:

> Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. . . .  **Upon the recovery of a final judgment** against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose **and if such judgment is not satisfied within thirty days** after the date when it was rendered, **such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer** to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.

(emphasis added).

[8]Tucker asserted that defendants may not attack the outcome of *Tucker I* because they were not parties to that proceeding and, having disclaimed coverage in August 2008, lacked legal standing to intervene on behalf of Journal Register.   *Tucker II*, Doc. #1, p. 11 (¶¶ 108-15).

her claims.[9]  Moreover, as part of that agreement, JRE assigned all claims and  rights under the EPL

Policy to Tucker, including "any and all claims against National Union, AIG and/or any of their [the

insured's] brokers or agents."  *Tucker I*, Doc. #142-1 ("Stipulation and Compromise of Unsecured

Claim"), ¶ 7.  JRE nonetheless expressly excluded any representation or warranty as to the viability

of any claims or rights under the EPL Policy.  *Id.*, ¶ 8.

## II.   PENDING MOTION

Pending before the Court is defendants' motion "to bifurcate all claims unrelated to the

question of whether coverage exists under the National Union insurance policy and stay unrelated

discovery.  Alternatively, defendants move the Court to issue a protective order delaying discovery

unrelated to the question of whether there is insurance coverage until after the Court rules on

defendants' dispositive motion.  Defendants also request the Court schedule a Rule 16 conference

with the parties to discuss discovery and amendment of plaintiff's defective complaint before

additional unnecessary discovery continues."  I have quoted from the body of defendants' Notice of

---

[9]In particular, pursuant to the settlement agreement, Tucker was granted an "Allowed
Other Unsecured Claim" against JRE in the amount of $3 million.  *Tucker I*, Doc. #142-1
("Stipulation and Compromise of Unsecured Claim"), ¶ 5.  That claim was to be docketed in
JRE's pending bankruptcy action, *In Re Journal Register Co., et al*, No. 09-10769 (ALG), upon
execution of the settlement agreement and was comprised of $1 million in compensatory
damages ("Allowed Distributable Claim") and $2 million in punitive damages ("Subordinated
Non-distributable Claim").  *Id.*, ¶ 5.  Distribution of the Allowed Distributable Claim was set to
be made within twenty days of the execution of the agreement.  *Id.*, ¶ 6.  The actual amount of
that distribution was to be calculated in the same manner as the pro rata share distribution to
"other Allowed Class 4 Unsecured Claims."  *Id.*  Furthermore, Tucker was barred from seeking
recovery or payment on the Subordinated Non-distributable Claim from any of JRE's assets
"other than the EPL Policy."  *Id.*, ¶ 5.  *See Tucker II*, Doc. #23,  p. 4-6,  for a full description of
the relevant Chapter 11 bankruptcy proceedings of  JRE and its parent company Journal Register
Company, commenced via voluntary petition on February 21, 2009, in the Southern District of
New York,  *In re Journal Register Co., et al.*, No. 09-10769 (ALG) (Bankr. S.D.N.Y. 2009).

Motion (Doc. #88), not the caption of that document.  The "dispositive motion" to which this language refers is explicated by p. 3, ¶ 4 of (Doc. #88): "Defendants are prepared to move for summary judgment on the coverage question as soon as Plaintiff files a factually accurate Complaint."

This opinion addresses separately each request contained in the motion, beginning with the request for an order bifurcating the question of insurance coverage and staying unrelated discovery.

## III.   DISCUSSION

### A.   Bifurcation Under Federal Rule of Civil Procedure 42(b)

Defendants argue that their motion is aimed at ending unnecessary discovery by narrowing permissible discovery to the threshold issue of whether insurance coverage under the EPL exists with respect to Tucker's claims.

The general principles governing bifurcation in federal civil litigation are familiar.  Under Federal Rule of Civil Procedure 42(b), a district court has broad discretion to try issues and claims separately in order to "further convenience, avoid prejudice, or promote efficiency."[10] *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999).   In particular, "bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue . . . or where one party will be prejudiced by evidence presented against another party[.]" *Id.* (citations omitted). *See also Vichare v. AMBAC, Inc.,* 106 F.3d 457, 466 (2d Cir.1996)

---

[10]Fed. R. Civ. P. 42(b), captioned, "Separate Trials," provides in relevant part:

For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.

(holding bifurcation to be "appropriate where the evidence offered on two different issues will be wholly distinct . . . or where litigation of one issue may obviate the need to try another issue").

Because "the general practice is to try all the issues in a case at one time," *Miller v. Am. Bonding Co.*, 257 U.S. 304, 307 (1921), bifurcation is the exception and "not the rule," *Svege v. Mercedes-Benz Credit Corp.,* 329 F. Supp.2d 283, 284  (D. Conn. 2004).  *See also U.S. v. 43.47 Acres of Land*, 45 F. Supp. 2d 187, 190  (D. Conn. 1999) ("Bifurcation . . .  is a procedural device to be employed only in exceptional circumstances.") (citing *Marisol A. v. Giuliani*, 929 F. Supp. 662, 693 (S.D.N.Y. 1996)); *Rosa v. Town of East Hartford*, No. 3:00CV1367 (AHN), 2005 WL 752206, at *4 (D. Conn. Mar. 31, 2005) ('Even though bifurcation is not unusual, it nonetheless remains the exception rather than the rule."); *Dallas v. Goldberg*, 143 F. Supp.2d 312, 315 (S.D.N.Y. 2001) (gathering cases) (same); *Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 763 F. Supp. 28, 35 (S.D.N.Y. 1991), *modified in part on other grounds*, 768 F. Supp. 115 (S.D.N.Y. 1991), *aff'd by summary order*, 101 F.3d 1394, 1996 WL 481813 (Table) (2d Cir. Aug.22, 1996) ("piecemeal litigation is not . . . favored, and bifurcation is inappropriate in cases where the facts are so inextricably interwoven that [separation] is impossible or at least manifestly unfair.") (internal quotations omitted) (citing  *Air King Products Co. v. Hazeltine Research, Inc.*, 10 F.R.D. 381, 383 (E.D.N.Y. 1950)).   "[W]here there is a significant overlap in the evidence pertaining to the claims to be separated, bifurcation will not serve judicial economy."  *ABB Indus. Systems, Inc. v. Prime Technology, Inc.*, 32 F. Supp.2d 38, 43 (D. Conn. 1998) (citing *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir.1984)).[11]

---

[11] *See also* Advisory Committee's Notes to Rule 42(b), admonishing that "separation of issues for trial is not to be routinely ordered." Advisory Comm. Notes, 1996 Amend., Fed. R.Civ. P. 42(b).

"In establishing that bifurcation is warranted, the burden falls squarely on the party seeking bifurcation." *Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006 (LAP), 2003 WL 1846864, at *1 (S.D.N.Y. April 8, 2003) (citing *Dallas*, 143 F.Supp.2d at 315).  "[T]he movant must justify bifurcation on the basis of the substantial benefits that it can be expected to produce." *Svege,* 329 F. Supp.2d at 284.

Bifurcation is within the district court's discretion and decided on a case-by-case basis. *Idzojtic v. Pennsylvania R.R.* Co., 456 F.2d 1228, 1230 (3d Cir. 1972).[12]   Moreover, Rule 42(b) "simply does not give rise to a bright-line test." *Guidi*, 2003 WL 1846864, at *1 (quoting *Monaghan v. SZS 33 Assocs., L.P.*, 827 F. Supp. 233, 245 (S.D.N.Y. 1993)). It is thus incumbent on the Court, "[o]n a case-by-case basis . . . [to] examine, among other factors, whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion." *Svege,* 329 F. Supp. 2d at 284. *See also U.S. v. 43.47 Acres of Land*, 45 F. Supp.2d 187, 190-91 (D. Conn. 1999). ("Bifurcation is only appropriate where (1) separate trials would promote judicial economy and convenience; or (2) a single trial would prejudice the interests of a party.") (citation omitted).

In exercising its discretion, the Court considers such factors as: (1) whether the pertinent issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the evidentiary issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted.  *See, e.g.*, *Strychasz v. Maron Const. Co., Inc.*, No. Civ.

---

[12]*See also   Morse/Diesel, Inc. v. Fidelity Deposit Co. of Maryland*, 763 F. Supp. 28, 35 (S.D.N.Y. 1991) ("[a] motion to sever and stay under Fed. R. Civ. P. 42(b) is addressed to the discretion of the court").

3:01CV2063(PCD), 2002 WL 32500874, at *4 (D. Conn. July 16, 2002); *Guidi,* 2003 WL 1846864, at *1.

### B.   Request to Bifurcate in This Case

#### 1.   Judicial Economy – whether litigation of insurance coverage issue will obviate need to litigate bad faith claims

Defendants request that this Court bifurcate the question of insurance coverage and stay unrelated discovery on the ground that bifurcation is "necessary to avoid needless delay of dispositive motions and harassment of the defendants and non-party witnesses." Brief, (Doc. #88-1), p. 9.   Specifically, defendants argue that bifurcation would prevent plaintiff from continuing to "us[e] these proceedings as a vehicle of discovery" against the defendants and JRE's insurance broker, in an effort to "find a viable claim where none exists."  *Id.*, p. 13.   Moreover, defendants assert that bifurcation of the insurance coverage issue would be "in furtherance of convenience" and "in the interests of efficiency and economy."[13] *Id.*, p. 12.

Defendants' counsel profess confidence that the entire action will be resolved upon this Court's ruling on their summary judgment motion because, "as a matter of fact and law, the National Union policy under which Plaintiff is pursuing claims does not afford coverage for Plaintiff's claim." *Id.*, p. 13.  Thus "[r]ather than facilitate further waste of time and money, and imposition of undue burden on non-parties, the Court should exercise its discretion to stay *discovery unrelated to the*

---

[13]In requesting bifurcation, defendants once again argue that plaintiff has exceeded the scope of the Bankruptcy Judge Gropper's permission "to pursue adjudication of the existence of insurance coverage" of the EPL Policy.  Doc. #88, p. 2 (¶ 1) & Doc. #88-1, p. 9.  The Court, however, has previously denied defendants' motion to dismiss this action as outside the scope of Bankruptcy Judge Gropper's ruling to lift the automatic stay.  Doc. #44.  For further discussion, *see* n.21, *infra.*

*question of coverage* until the dispositive motion is resolved." *Id.* (emphasis in original)

Plaintiff counters that a ruling on the issue of coverage will *not* resolve her entire action. Rather, she argues that her tort claims of bad faith, as set forth at Counts Two and Five of her Complaint, will survive even in the absence of proven insurance coverage.   In support of that proposition, she points to an article authored by an attorney in defendants' counsel's firm. *See* Doc. #91, p. 3 & Doc. #91-5, p. 1 (Julia K. Ulrich, Esq.  of Edwards Angell Palmer & Dodge LLP: "When Actions Speak Louder than Words:  Procedural Bad Faith in the Absence of Coverage," published in martindale.com Legal Library on Mar. 24, 2009) ("Ulrich Article"). .

The Ulrich  article states explicitly that the viability of a procedural bad faith claim does not depend on the existence of coverage under the underlying insurance policy:

> Certain states have recognized a common law tort often referred to as procedural (as opposed to substantive) bad faith.  Unlike a substantive bad faith, which is, in basic terms, the failure by an insurer to pay a *meritorious* claim, procedural bad faith is a vehicle for an insured to seek damages based on an insurer's bad faith handling of any claim, meritorious or otherwise.  Simply stated, **an insurer can be required to pay bad faith damages for a claim for which the insurer has no coverage obligations on an insurance policy, if the insurer handled the investigation or denial of the non-covered claim in an unfair manner**.

Doc. #91-5, p. 1 (emphasis added; footnote omitted).

With specific reference to Connecticut law, the Ulrich Article notes that "although the Connecticut Supreme Court has not yet spoken on the issue, the district court in that state has predicted a similar outcome,"and goes on to say:

> *United Technologies Corp. v. Am. Home Assurance* Co., 118 F. Supp. 2d 181, 188-89 (D. Conn. 2000), *mod. after recon. on other grounds*, 237 F. Supp. 2d 168 (D. Conn. 2001), the district court was asked to determine whether the Connecticut Supreme Court would likely recognize a common law action for procedural bad faith not involving wrongful withholding of

11

payment due under an insurance policy.  Although the defendant insurer argued that a claim of bad faith is not actionable without a showing of a failure to pay a meritorious claim (substantive bad faith), the court concluded, after carefully analyzing existing state court precedent, that the Connecticut Supreme Court would not limit the tort of bad faith to claims of unreasonable or wrongful denial of claims.  **The court reasoned that an insurer's duty of good faith can be breached not only when coverage is unquestioned, but also when there is no coverage.**

*Id.* (emphasis added).[14]   Moreover, in a footnote to that paragraph, Ulrich noted that *United Technologies* has been repeatedly cited by Connecticut courts to recognize  procedural bad faith as an independent tort.  *Id.*, p. 2 n.6 (citing *Fortin et al. v. Hartford Underwriters Ins. Co. et* al., No. X04CV030103483, 42 Conn. L. Rptr. 353, 2006 WL 35245562 [, at *2],(Conn Super. Ct. Nov. 20, 2006) ).[15]

The Court is persuaded by Judge Arterton's careful analysis  in *United Technologies Corp. v. Amer. Home Assur. Co.*, 118 F. Supp. 2d 181, 188-89 (D. Conn. 2000), concluding  that the

---

[14]*See also* Doc. #91-6, p. 1 (Julia Karen Ulrich and Dennis O. Brown, "Procedural Bad Faith," *Ins. Law Coverage Bulletin* (Aug. 1, 2009) ("An insurer can be required to pay bad faith damages related to a non-covered claim for which the insurer has no coverage obligations under an insurance policy if the insurer handled the investigation or denial of the non-covered claims in a purportedly unfair manner.").

[15]Footnote 6 to the Ulrich Article provides in full:

The *United Technologies* holding has been acknowledged numerous times in Connecticut since that decision, including at the state trial court level.  *See Joseph Fortin et al. v.. Hartford Underwriters Ins. Co. et al.*, 2006 WL 3524562 [, at *2], 42 Conn. L. Rptr. 353 (Conn Super. 2006) (insurer claims that tort was only available when insurer breached its contract; court noted that such expansive reading of case law does not withstand scrutiny in  light of United Technologies['] careful review of Connecticut case law and conclusion that Connecticut courts have recognized an independent common law tort for such conduct.")

Doc. #91-5, p. 1 n.6.

Connecticut Supreme Court would not limit the tort of bad faith in the insurance context to claims of unreasonable or wrongful denial of claims.  118 F. Supp. 2d at 188 (collecting and examining cases from numerous jurisdictions).  "The insurer duty of good faith is not triggered only when coverage is unquestioned." *Id.*

After all, "the core of the duty of good faith and fair dealing is that the insurer act reasonably toward its insured."  *Id.* (quoting *Deese v. State Farm Mut. Auto, Ins. Co.*, 172 Ariz. 504, 508, 838 P.2d 1265 (Ariz. 1992)).   In other words, not only is an insured entitled to security from financial loss, it is additionally entitled to the security of knowing it will be dealt with in good faith.  *Id.* "Claims of bad faith on the part of the insurer are [thus] not limited solely to substantive decisions to deny coverage."  *Id.* at 189.  These principles apply to Tucker, although she was not a named *insured* under the EPL defendants issued to JRE; as discussed *supra*, the rendition of a judgment in Tucker's favor, remaining unpaid, gives Tucker statutory (direct action) rights against defendants, and the manner of the conclusion of the case before Judge Underhill installs Tucker as the assignee of JRE's claims against defendants under the policy.  *See also Buckman v. People Express, Inc.*, 205 Conn. 166, 170 (Conn. 1987) ("court recognizes an independent cause of action in tort arising from an insurer's common law duty of good faith"); *Fortin v. Hartford Underwriters Ins. Co.*, No. X04CV030103483S, 2006 WL 3524562, at * 2  (Conn. Super Ct. Nov. 20, 2006) (citing Judge Arterton's ruling in *United Technologies*, 118 F. Supp. 181, to hold that there is "an independent common law tort" for breach of obligation of good faith and fair dealing that is  not only available when the insurer has breached its contract).

In their reply brief, defendants assert that "[a]n independent tort for bad faith does not exist as a matter of law outside the breach of the covenant of good faith and fair dealing."  Doc. #92, p.

13

2.  Defendants thus contend that plaintiff's fifth count, labeled merely as "tort of bad faith," which is virtually identical to her second count for breach of the covenant of good faith and fair dealing, "pleads a cause of action not recognized at law." *Id.* at p. 3.

The Court notes that whether plaintiff's fifth count states a valid claim for relief is not the subject of the pending motion and thus not subject to determination at this time.  However, the parties should be advised that in *Ensign Yachts, Inc. v. Arrigoni*, 09cv209 (VLB), 2010 WL 918107, at *13 (D.Conn. Mar. 11, 2010), this District recognized that a plaintiff's "bad faith claims are similar, but distinct from, its claims alleging breach of the covenant of good faith and fair dealing." (citing *Michalek v. Allstate Ins. Co.*, No. CV075008280, 2008 WL 283945, at *4 (Conn.Super.Ct. Jan. 18, 2008)).  The Court in *Ensign Yachts, Inc.,* then clarified that "bad faith 'is a necessary, but insufficient condition for a breach of the covenant of good faith and fair dealing.' . . .  Bad faith is also separately recognized as a tort claim in Connecticut."  2010 WL 918107 at *13  (citing *Bergen v. Standard Fire Ins. Co.*, No. CV 93044099S, 1997 WL 809957, at *15 (Conn.Super.Ct. Dec. 31, 1997)).

Defendants further point to the Connecticut Appellate Court's opinion in *Heyse v. Case*, 114 Conn. App. 640 (2009),  to conclude that  a claim for procedural bad faith will not lie in the absence of insurance coverage.   The bad faith at issue in *Heyes*, however, was actually *substantive* bad faith as opposed to *procedural* bad faith.[16]   The plaintiff in *Heyes* sought recovery for the insurer's bad-faith decision to deny that a title insurance policy obligated the insurer to defend and indemnify

---

[16]As Judge Arterton noted in *United Technologies*, referencing *Buckman*, "a failure to pay a meritorious claim" constitutes "substantive bad faith, while . . . bad faith in the handling of an insurance claim . . . is 'procedural bad faith.'" 118 F. Supp. 2d at 186.   *Heyes* is thus distinguishable from *United Technologies* with respect to the type of good faith at issue.

plaintiff insured in connection with her alleged right to enforce a limitation on subdivisions in a common interest community.  Such a claim for denial of benefits, by its very nature, involves the application or interpretation of a contract term and thus the existence of a contract.  Under such circumstances, the court is duty-bound to interpret the terms of the contract to determine what benefits the plaintiff might reasonably expect to receive under that contract and whether the insurer wrongfully chose to deny such expected benefits.

A claim of *procedural* bad faith, however, as proffered by the plaintiff in *United Technologies,* is predicated on the bad faith *handling process* of the claim, regardless of whether coverage exists.  Accordingly, there is no conflict between the holdings of *Heyes* and *United Technologies*.  In sum, Connecticut courts have not negated the existence of an independent tort for procedural bad faith in the absence of coverage.

In their reply brief, defendants next assert that plaintiff's second count for "bad faith" is fatally defective because a common law duty of good faith and fair dealing exists only between the insurer and insured – *i.e.*, does not extend to a third party.  *Id.*, p. 4 (citing *Carford v. Empire Fire and Marine Ins*., Co., 94 Conn. App. 41, 45 (2006)). Defendants maintain that, pursuant to *Carford*, plaintiff may not recover any damages for breach of the covenant of good faith and fair dealing under Connecticut's direct action statute, § 38a-321, because such damages were hers alone (not JRE's) and she is a third-party claimant.

Defendants' reliance on *Carford*, however, is overly simplistic and misses the mark. In *Carford*, automobile accident victims brought an action under Conn. Gen. Stat. § 38a-321, Connecticut's "direct action" statute,  against a liability insurer to recover for unfair insurance practices for breach of the duty of good faith dealing.  The Superior Court granted the defendant

insurer's motion to strike the complaint and entered judgment for the insurer, stating that "the plaintiffs assert claims based upon an insurance contract to which they are not a party and where no subrogation exists." 94 Conn. App. at 43-44.  The  Connecticut Appellate Court affirmed, holding that the victims had no cause of action against the insurer for breach of the covenant of good faith and fair dealing because the victims had obtained no judgment against the insured and thus had no right to bring an action, pursuant to Conn. Gen. Stat. § 38a-321, as a third-party claimant until after judgment.[17]  In so holding, the Connecticut Appellate Court clarified that "[a] third party claimant is subrogated to the rights of the insured, and is entitled to bring an action against an insurance company, only *after* judgment." *Carford*, 94 Conn. App. at 58 (citing Conn. Gen. Stat. § 38a-321) (emphasis in original).  "Because there was no contractual relationship between the parties, nor any judgment leading to subrogation, the defendant owed no duty of good faith and fair dealing to the plaintiffs."  *Id.* at 58-59.[18]

---

[17]In so holding, the Connecticut Appellate Court clarified that "[a] third party claimant is subrogated to the rights of the insured, and is entitled to bring an action against an insurance company, only *after* judgment." *Carford*, 94 Conn. App. at 58 (citing Conn. Gen. Stat. § 38a-321) (emphasis in original).  "Because there was no contractual relationship between the parties, nor any judgment leading to subrogation, the defendant owed no duty of good faith and fair dealing to the plaintiffs."  *Id.* at 58-59.

[18]Defendants also assert that, even after the Appellate Court's ruling, the Connecticut Superior Court "still precluded [the plaintiffs] from pursuing a claim for breach of the covenant of good faith and fair dealing due to the absence of a contractual relationship with the insurer." Doc. #92, p. 4 (discussing *Carford v. Empire Fire & Marine Ins.*, No. CV065001946S, 47 Conn. L. Rptr. 430, 2009 WL 1055420 (Conn. Super. Mar. 24, 2009).   In *Carford*, however, the Superior Court did not preclude all coverage for third parties subrogated under Conn. Gen. Stat. Can § 38a-321 but rather examined and distinguished the kind of damages recoverable – those actually suffered or incurred by the insured (versus those solely suffered by the third party – *e.g.*, "additional economic and noneconomic damages . . . and personal hardship" due to defendant's failure to effectuate a prompt settlement").  2009 WL 1055420, at *3.   In the present action, Tucker explicitly seeks damages recoverable as a subrogee of the EPL Policy, *i.e.*, those damages for which JRE could recover under the contract.  *See* Doc. #1-2, ¶ 92.

In the present case, however, not only has Tucker obtained a final judgment against the insured JRE in *Tucker I* which has not been fully satisfied, she has also received an express assignment from JRE of all claims and rights under the EPL Policy, including "any and all claims against National Union, AIG and/or any of their or [the insured's] brokers or agents."[19]   *Tucker I*, Doc. #142-1 ("Stipulation and Compromise of Unsecured Claim"), ¶ 7.   Plaintiff is thus not merely

---

[19]Defendants contest plaintiff's assertion that she has obtained a "final judgment" within the meaning of Conn. Gen. Stat § 38a-321.  However, examining the proceedings in *Tucker I*, it is clear that the action has reached its final conclusion.  On July 29, 2008, judgment was entered on the jury's verdict in favor of plaintiff for $4 million ($1 million compensatory damages and $3 million punitive damages). *Tucker I*, Doc. #73.  JRE's post-verdict motions – motion for judgment as a matter of law and motion for new trial –  temporarily remained pending following March 24, 2009, when the proceedings in *Tucker I* were automatically stayed, pursuant to 11 U.S.C. § 362(a), after JRE and its parent company filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code.   Judge Underhill thereafter denied all post-trial motions without prejudice while the case remained closed.  *Tucker I*, Doc. #129.  Subsequently, JRE withdrew all post-trial motions with prejudice, (Doc. #142, p. 3) and entered into a final settlement agreement with plaintiff, thereby resolving the action (Doc. #142-1).   Moreover, Judge Underhill made his final rulings in the action, denying as moot Tucker's motion to reopen the case (Doc. #130), Doc. #144 (filed January 7, 2011), and finding as moot AIG's and National Union's Motion to Intervene(Doc. #131), Doc. #145 (filed 2/3/2011).  *Tucker I* is thus fully resolved and closed.  *See, e.g., Transport Workers Union of America, Local 100, AFL-CIO v. New York City Transit Authority,* 505 F.3d 226 (2d Cir. 2007) (for purposes of appeal, "[a] 'final' decision embodied in 'final'  judgment 'is one that conclusively determines the pending claims of all the parties to the litigation, leaving nothing for the court to do but execute its decision'") (quoting *Citizens Accord v. Town of Rochester,* 235 F.3d 126, 128 (2d Cir.2000)); *Smith v. Otis Elevator Co.*, 33 Conn. App. 99, 102, 633 A.2d 731 (1993) ("[A]s a general rule, in a civil jury case final judgment enters as a matter of course once a motion to set aside the verdict is denied.")(citing  *Gordon v. Feldman*, 164 Conn. 554, 557, 325 A.2d 247 (1973)).

Furthermore, regardless of the "final" nature of the judgment in *Tucker I*, pursuant to the settlement agreement, JRC and its subsidiaries (including JRE) have "irrevocably assign[ed] and transfer[red] to Tucker . . . any and all of their claims and rights pursuant to and under the EPL Policy with regard to, or in any way connected with . . . the Claim and the Judgment  [in *Tucker I*], including any and all claims against National Union, [and ]AIG." *Tucker I*, Doc. #142-1, p. 6-7 (¶ 7).  Tucker has thus stepped into the shoes of her former employer, JRE, for the purpose of pursuing the present claim under the EPL Policy.

a third party claimant on the EPL Policy, she is an express assignee of all of JRE's rights thereunder.

### 2.   Evidentiary overlap

With respect to judicial economy, the Court notes that discovery regarding the insurance coverage issue will likely overlap with that involving bad faith in that the witnesses who either are or have been defendants' employees or associates may possess relevant information as to both the existence and/or scope of coverage under the EPL and any steps that were taken to handle Tucker's claims.   In the event that each witness may be examined with respect to all relevant issues by being deposed once, the recall of a witness for further testimony may be obviated.   It should thus be beneficial to all parties involved, saving both time and expense, not to require multiple depositions where one deposition per witness might suffice.

Federal Rule of Civil Procedure 26(b)(1), captioned "Duty to Disclose; General Provisions Governing Discovery," defines a broad scope of permissible discovery that is designed to achieve disclosure of all the evidence relevant to the merits of a controversy.[20]   In the absence of prejudice

---

[20]Fed. R. Civ. P. 26(b)(1) thus provides that  "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Moreover, the standard to determine whether something is discoverable under Rule 26 is broader than that used to rule on  admissibility at trial.  *F.D.I.C . v. Wachovia Ins. Services*, No. 3:05-CV-929 (CFD), 2007 WL 2460685, at *3 (D. Conn. Aug. 27, 2007).   In sum, even if a matter would be inadmissible at trial, it is "relevant" under Rule 26(b)(1) if it is "reasonably calculated to lead to the discovery of admissible evidence."  *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir.1991) (quoting *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *United States v. Kross*, 14 F.3d 751, 754 (2d Cir. 1994) (courts permit discovery "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *El Badrawi v. Dep't of Homeland Sec.*, 258 F.R.D. 198, 201-02 (D. Conn. 2009) (plaintiff is generally entitled to depose fact witnesses who possess non-privileged information directly related to, *or that may reasonably lead to*, any matter bearing on his claim).

to the parties, allowing counsel to pursue all relevant matters in one deposition or one set of interrogatories streamlines the discovery process.

In the case at bar – where discovery has proceeded in a halting, combative fashion – the Court has no inclination to further hinder its progress.[21]  Expediting the completion of discovery should be paramount for all concerned.

### 3.    Lack of prejudice to defendants

Lastly, the Court finds that defendants have failed to establish facts and circumstances to demonstrate that they would be unduly prejudiced if the discovery of all relevant facts proceeds. Rather they principally point to the personal inconvenience of various out-of-state employees and non-party witnesses in having to testify.  *See, e.g.,*  Doc. #88-1, p. 10 (Barry Aranowitz, a "current employee who works in New York" and was "unavailable on the date he was subpoenaed for personal reasons"), *id*., (non-party witness Japhet Boutin, a former employee who "lives and works in New York" and "expressed concern about having to miss time from work to travel to Newark,

---

[21]In their memorandum, defendants have attempted to relitigate two issues previously decided by this Court.  In its Order filed 9/30/2010 (Doc. #44), the Court explicitly ruled against defendants with respect to the arguments that (1) this action lies outside the scope of Bankruptcy Judge Gropper's order lifting the automatic stay and (2) AIG is an improper party to this action. *See* Doc. #44, p. 31-32.  The Court assumes the parties' familiarity with its rulings and the well-established principle that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*,  460 U.S. 605, 618 (1983); *see also U.S. v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (the first facet of the law-of-the-case doctrine is that "when a court has ruled on an issue, 'that decision should generally be adhered to by that court in subsequent stages in the same case.'" (citing *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.2002), *cert. denied*, 539 U.S. 902 (2003)). In accordance with this Court's prior rulings, defendants are instructed that a general refusal to allow discovery regarding AIG is in direct conflict with the Court's ruling that AIG is properly included as a defendant.   Therefore, any future such refusals shall be viewed as obstructive to the discovery process, causing undue delay and burden to plaintiff.

New Jersey, . . . from downtown Manhattan" to attend her deposition).  Due to the hectic pace of life and the exigencies of career and family, "personal inconvenience" is common, perhaps even inherent, whenever one is requested to testify and is thus not sufficient in and of itself to excuse one's testimony.  Absent a showing of sufficient prejudice to defendants, the Court, in its discretion, finds the exceptional procedure of bifurcation unwarranted.

In the interest of expediting discovery, plaintiff shall be allowed to question the relevant witnesses on all issues related to the EPL Policy – the existence of coverage and the handling of her claims – at the same time.[22]   Defendants' request to bifurcate the issue of coverage shall  be denied.[23]  The Court shall next turn to defendants' request for a protective order.

## C.     Alternative Request for Protective Order

Defendants have requested, in the alternative, that this Court issue a protective order, pursuant to Federal Rule of Civil Procedure 26(c), "delaying discovery unrelated to the question of

---

[22]With respect to comity, the Court notes that its present decision concurs with that of United States Magistrate Judge Mark Falk on the bifurcation issues raised by defendants.  *See Tucker v. American International Group, et al.*, Nos. 11-cv-2800 (WJM), Doc.  # 6 (Order, filed 6/23/11, denying Defendants' Motions to Quash Subpoenas of non-parties Barry Aranowitz and Japhet Boutin).  In their memoranda in support of defendants' motion to quash the Aranowitz subpoena, defendants made the same assertions regarding bifurcation that are contained in their current briefs.  *See* District of New Jersey actions, both captioned *Tucker v. AIG*, 11cv2800 and 11cv2801 (WJM), Doc. #1-2, p. 11-14.

[23]The Court's decision to deny bifurcation in this case is clearly distinguishable from the cases in which courts have bifurcated the issues of liability and damages.  In those cases, the issue of damages cannot arise absent a finding of liability.  Addressing damages in advance of a finding of liability may, under certain circumstances, evoke sympathy from jurors and thus be prejudicial to the defendant.  Such is not the case here, where aside from general allegations of inconvenience, defendants have failed to demonstrate any resulting prejudice from allowing discovery to proceed as to all relevant matters.

whether there is insurance coverage until after the Court rules on Defendants' dispositive motion."[24]

Doc. #88, p. 1-2.  Rule 26(c) enables a district court, "for good cause," to issue an order to protect

a party or person from "annoyance, embarrassment, oppression, or undue burden or expense."[25]

_____

[24]With respect to the "dispositive motion" referenced by defendants in their request, prior to the motion at hand, defendants filed only one motion to dismiss (Doc. #18, filed 12/18/2009) and the Court ruled on that motion (Doc. #44, filed 9/30/2010).  Defendants' alternative request for a protective order, if made with reference to their motion to dismiss (Doc. #18), is thus moot at this time.

More  recently, however, after filing the present motion, defendants filed a summary judgment motion.  *See* Doc. #98 (filed 8/2/2011).  That motion remains pending but is not yet ripe for decision.  In particular, plaintiff has indicated her desire to respond to said motion, but has not yet done so.  Doc. #107, 112.  In fact, she seeks additional time – *i.e.*, *until the close of discovery* – to file her response.  *Id.*   Defendants have responded by objecting to that extension on the grounds that plaintiff has not presented the requisite "affidavit or declaration that, for specified  reasons, [she] cannot present facts essential to justify [her] opposition."   Doc. #117, p. 2 (citing Fed. R. Civ. P. 56(d)).  Plaintiff then filed such a Rule 56(d) affidavit in further support of her motion.  Doc. #118.

I dispose of the particular issues described in this footnote by ruling herewith that, in accordance with preferred Rule 56 practice, the Court will not entertain or adjudicate any motions by either party for summary judgment until all discovery has been completed.  *See, e.g., Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000): "[S]ummary judgment should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. . . . Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." (citations and internal quotation marks omitted; emphasis in original).  This principle resonates particularly in the case at bar, where quarrelsome obstructionism has delayed meaningful discovery.  While Rule 56(b) allows a motion for summary judgment "on all or part of the claim," the issues in this case are so intertwined, as demonstrated in text, that partial summary judgment practice would not be appropriate.

[25]Fed. R. Civ. P. 26(c), entitled "Protective Orders," states in relevant part:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending — or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve

Having determined that discovery should proceed on all relevant issues in the case, and having further examined the allegations of annoyance and burden with respect to prejudice to defendants, the Court finds the requested protective order unnecessary at this time.

Furthermore, with respect to defendants' present request for a protective order *on equitable grounds – i.e.*, that the current scope of discovery has enabled plaintiff to engage in both annoying and unduly burdensome behavior – that request is made with less than clean hands.  From  within the proverbial "glass house," defendants have hurled a battery of bricks at plaintiff.  According to plaintiff in her responsive memorandum, there have been numerous instances of obstructive and

---

the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

annoying behavior on the part of defendants.[26]

Where both parties have reportedly engaged in vexatious, abusive behavior, the Court declines to find one party more "annoying" or "burdensome" than the others. Rather, akin to a parent who, when driving a motor vehicle, admonishes his bickering children, "don't make me stop this car," the Court now admonishes both sides to cease and desist such contentious and fruitless behavior, which has driven this action to repeated, unnecessary halts.

Under these circumstances, where both sides have engaged in constant feuding, going round and round the discovery issues, resulting in endless contentiousness and delay, the Court denies the pending motion for protective order without prejudice to renewal in the event such feuding continues and/or escalates (although that had better not happen; *see* n. 2, *supra*).

### D.     <u>Request for Rule 16(a) Conference</u>

Lastly, defendants have requested the Court to "schedule a Rule 16 conference with the parties to discuss discovery and amendment of plaintiff's defective Complaint before additional unnecessary discovery continues." Doc. #88, p. 2. Federal Rule of Civil Procedure 16(a) authorizes a district court to "order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes, [*inter alia*,] as . . . expediting disposition of the action;" "discouraging wasteful pretrial activities;" and "facilitating settlement." Fed. R. Civ. P. 16(a). At such a pretrial conference, "the court may consider and take appropriate action" on a wide variety of matters, such as "formulating and simplifying the issues, and eliminating frivolous claims or

---

[26]For example, as stated *supra* at n. 21 herein, the Court notes that defendants have continued to dispute the fact that AIG is a proper party to this action, despite the Court's previous ruling that plaintiff has alleged sufficient facts at the pleading stage to justify inclusion of AIG under the instrumentality test for piercing the corporate veil. *See* Doc. #44, p. 20-30.

defenses;" "amending the pleadings if necessary or desirable;" "controlling and scheduling discovery;" and "referring matters to a magistrate judge." *Id.* 16(c)(2); *see also* 88 C.J.S. Trial § 50 ("Simplification and elimination of issues") (Westlaw 2011)(A pretrial conference enables the court to "narrow the issues of litigation to those that are contested and to dispense with proof on issues which are not contested").

Given the parties' notable and repeated skirmishing and constant discord in pursuing discovery, the Court shall grant defendants' request for a pretrial conference. Matters to be discussed at the conference will include, *inter alia*:    resolving remaining discovery disputes, professional decorum, and possible settlement of the case.[27]   It is the Court's fervent hope that this conference may end the parties' continuous stream of alleged "abuse of discovery" motions, thereby reducing costs and delay in this action.

### E.     Amendment of the Complaint

With respect to amendment of the pleadings, the Court finds that it is appropriate for the plaintiff to amend her Complaint to reflect the current state of facts at this time. As defendants noted in their present motion, subsequent events have transpired to result in the final closure of *Tucker I*, particularly the entry of the plaintiff's settlement agreement with JRC. *See* Doc. #88-1, p.6. (Plaintiff has "been proceeding on a factually defective Complaint for more than four months" – *i.e.*, since the time that she "entered into a settlement directly with Journal Register.").

The Court hereby orders plaintiff to amend and update her Complaint for the purpose of enhancing its factual accuracy. She shall e-file her Amended Complaint on or before **December 9,**

---

[27]Albeit, the Court acknowledges that, at the present, the possibility of any such settlement appears remote.

**2011.** Defendants shall e-file their answer or response to that Amended Complaint within twenty-one (21) days thereafter.


IV.  __CONCLUSION__

For all the of the foregoing reasons, the Court hereby DENIES defendants' Motion to Bifurcate and Stay or, Alternatively, for Protective Order. Doc. #88-1. The motion to bifurcate is DENIED because, on balance, the Court finds that defendants have failed to satisfy their burden to establish that bifurcation would produce substantial benefits justifying departure from the general rule that all relevant issues in the case may be pursued throughout discovery. Judicial economy would not be furthered by bifurcation because resolution on the issue of the existence of insurance coverage will not dispose of plaintiff's additional claims upon which discovery is sought. In fact, there is likely to be evidentiary overlap on the issues of insurance coverage and bad faith handling of plaintiff's claim. Furthermore, in pointing primarily to personal inconvenience of witnesses, defendants have failed to sufficiently demonstrate prejudice in the absence of bifurcation.

Similarly, the Court DENIES defendants' request for a protective order. Defendants have failed to establish "good cause" for the Court to enter such an order pursuant to Fed. R. Civ. P. Rule 26(c). Given the current posture of discovery, a stay at this point would delay the action and ultimately increase the expense to all parties. The Court is aware that counsel for all parties have described discovery incidents which allegedly gave rise to "annoyance, embarrassment, oppression, or undue burden or expense." However, rather than finding one party to have been more annoying, created more embarrassment, and so forth, the Court admonishes all parties to henceforth cooperate in completing the necessary discovery and DENIES the motion for a protective order without

prejudice to renewal should relations between counsel continue to worsen.

All prior filings with respect to motions for dispositive or summary judgment, pending or contemplated, are stayed pending completion of discovery and the Court's further order.

The Court GRANTS defendants' request for a Rule 16 conference. The conference will be held before the Court at the New Haven courthouse on a date and at a time to be specified in a subsequent order.

Counsel for the parties are directed to meet together forthwith, and attempt in good faith and mutual respect to agree upon the names of all witnesses to be disposed by either party, together with the date, time and place of each deposition. Not later than **December 16, 2011**, counsel are directed to file a detailed stipulation for endorsement by the Court setting forth the agreement they have reached. If counsel cannot agree upon such a stipulation, the matter will be the first item on the Rule 16 conference agenda and the Court, after resolving any disputes, will enter the resulting deposition schedule as an order of the Court. The conference will also enable the Court to address any other discovery issues that have plagued this litigation, and explore the possibility of a settlement.

In light of the settlement and disposition filed in *Tucker I*, the Court ORDERS plaintiff to amend her complaint to reflect the current state of facts in this action. Plaintiff shall efile her amended complaint on or before **December 9, 2011**, and defendants shall e-file their answer or response within twenty-one (21) days thereafter.

It is SO ORDERED.

Dated: New Haven, Connecticut
       December 2, 2011

                                         */s/Charles S. Haight, Jr.*
                                         Charles S. Haight, Jr.
                                         Senior United States District Judge

26