# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TERI TUCKER,<br><br>          Plaintiff,<br><br>  v.<br><br>AMERICAN INTERNATIONAL GROUP, INC.; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., A SUBSIDIARY OF AMERICAN INTERNATIONAL GROUP, INC.,<br><br>        Defendants. | 3:09 - CV - 1499 (CSH) |

## RULING ON PLAINTIFF'S MOTION TO COMPEL INSPECTION OF THIRD PARTY MARSH USA, INC.'S COMPUTER RECORDS (DOC. #56)

HAIGHT, Senior District Judge:

## I.      INTRODUCTION

Plaintiff Teri Tucker ("plaintiff" or "Tucker") commenced the present action to recover damages from her former employer's insurers, American International Group, Inc. ("AIG") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union") (collectively "defendants"), arising from her unlawful discharge in 2003, pursuant to an employment practices liability insurance policy (herein "EPL Policy").    In this action, she seeks to collect from defendant insurers the $4 million judgment in her favor in *Tucker v. Journal Register East*, Doc. # 3:06-CV-

1

307 (SRU) (herein "*Tucker I*"), the prior action against her former employer, Journal Register East.[1]

In the course of discovery, on April 8, 2010, Tucker served a "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" upon non-party Marsh USA, Inc. (herein "Marsh"), the insurance broker with respect to the EPL Policy.   Doc. #57-1.   On May 7, 2010, "[b]ased on a search of hard copy documents," Marsh produced several hundred documents in response.   Doc. #67, p. 5, Doc. #57, p. 1.   Plaintiff contends that "[m]issing from these documents were  relevant emails sent to a former employee of Marsh, Lucy Carter, who handled the Journal Register Company's applications for the EPLI insurance to AIG member companies."   Doc. #57, p. 1.   Specifically, missing from the production was "an email dated April 19, 2007 from Ricardo Venegas of JRC [Journal Register Company]  to Lucy Carter, . . . inquiring whether the defendants had been notified of two lawsuits against JRC, one of which was Tucker's."   Doc. #67, p. 5 (describing "April 19 Email").   Plaintiff had previously independently obtained this and other similar emails after subpoenaing Journal Register Company.   Doc. #57, p. 1.

Plaintiff asserts that upon noting "the missing records, [her counsel] immediately requested that Marsh perform a further search of its computer records for additional emails to, and from, Carter" regarding her claim.   *Id*., p. 1-2.   In response, Marsh ordered its IT Department to restore Ms. Carter's email profile for the relevant period.   Doc. #67-6, ¶ 4.   Consequently, a backup tape for the period of November 5, 2003 to April 20, 2007 was restored and Ms. Carter's email was searched for the following terms: "Journal Register, Teri Tucker (both Teri and Tucker separately and collectively), Litigation, Ricardo Venegas, and Claims."   *Id.*   On August 18 and 30, 2010, Marsh

---

[1]A full discussion of the facts is set forth in this Court's prior rulings, familiarity with which is assumed.  Doc. #39, 44, 123.

produced additional emails and correspondence.[2]  Doc. #57, p. 2; Doc. #70-4.  Once again, plaintiff

found the production response deficient, noting that "internal emails regarding her claim . . .

suddenly stop without explanation as of April 24, 2007." Doc. #57, p. 2.

Shortly thereafter, in August 2010, Jeffrey Bagnell, counsel for plaintiff, conferred  with

Steven Monroe, counsel for Marsh, regarding a possible additional search of Marsh's records by

Datatrack Resources, LLC (herein "Datatrack"),[3]  an independent contractor retained and

─────────────────

[2]Steven Monroe, Senior Litigation Counsel at Marsh & McLennan Companies, Inc., of which Marsh USA, Inc. (herein "Marsh")  is a subsidiary, details the extensive nature of the second search of Marsh's computer records in his affidavit as follows:

> I then directed [Marsh legal assistant] Ms. Smart to request that Marsh's IT Department restore Lucy Carter's email profile through June 2007, as discussed with Mr. Bagnell. The second backup tape for Ms. Carter's email contained the dates November 5, 2003 through June 8, 2007.  Ms. Smart, working at my direction, then conducted another search using the search terms identified in Paragraph [4] [*i.e.*, "search terms: Journal Register, Teri Tucker (Teri and Tucker separately and collectively), Litigation, Ricardo Venegas and Claims"].  One responsive email was identified, the April 19, 2007 email.  The Legal Department learned that Ms. Carter had forwarded the April 19, 2007 email to Jonathan Fraznick, a claims advocate working in Marsh's Claims Group.  As a result, Ms. Smart requested a restoration of Mr. Fraznick's emails for the relevant time period from Marsh's IT Department.  The back-up tape for Fraznick's email profile contained the dates from April 22, 2003 through December 31, 2007.  Ms. Smart, working at my direction, then conducted a search of the back-up tape for John Fraznick's email profile using the same search terms identified in Paragraph [4] and found a subsequent history of the April 19, 2007 email which was promptly produced to Mr. Bagnell.

Doc. #67-6, ¶ 5.  *See also* Doc. #57-2 (Letter from Marsh's legal assistant, Sonia Smart, to Bagnell, dated August 30, 2010,  informing him that "Marsh conducted an additional review of its records as per your legal hold notice for its Journal Register/Terri Tucker claim files" and "[e]nclosed, please find the additional records Marsh located per your request.  I trust this satisfies Marsh's obligations under the terms of the subpoena.").

[3]Throughout her submissions, plaintiff refers to her expert as "Data Trak Resources, Inc.," abbreviated as "Data Trak."  *See, e.g.,* Doc. #57, p. 2.  The Court notes, however, that the affidavit of  Dorran Delay, submitted to the Court by plaintiff, describes Delay's position as

compensated by plaintiff.[4]   Doc. #57, p. 2.   Monroe stated that "Marsh would seriously consider [Bagnell's] suggestion and that he should send [Monroe] a written proposal." Doc. #67-6, ¶ 7.   On September 30, 2010, Monroe received Bagnell's written proposal but "viewed it as overly broad and unduly burdensome." *Id*., ¶ 8.   On October 20, 2010, Bagnell sent an email to Marsh legal assistant Sonia Smart to inform Marsh that plaintiff, through Datatrack, was ready to proceed with the proposed inspection of Marsh's computer records.   Doc. #57-4.   On October 27, 2010, Monroe responded to Bagnell's proposal by phoning him and leaving a voicemail message indicating that Marsh would not agree to plaintiff's proposed search.   Doc. #67-6, ¶ 9; Doc. #57, p. 2.

Monroe suggested that he and Bagnell "discuss what Bagnell needed" and that Marsh "proceed in a more traditional fashion with an agreed upon set of search criteria and other parameters." Doc. #67-6, ¶ 9.   Monroe stated in his affidavit that Bagnell never returned the call to resolve the issue of a further search before filing the motion to compel.   *Id.*, ¶ 10.   Rather, the following day, October 28, 2010, Bagnell emailed Sonia Smart with a message to Monroe that Bagnell believed that he and Monroe had reached an agreement several weeks ago that plaintiff's third party expert would be allowed "to inspect [Marsh's] relevant computer media regarding Lucy Carter's involvement in this claim." Doc. #57-5, p. 1.   Bagnell further stated that he had "retained Data Trak Resources at considerable expense" to his client, Tucker.   Finally, Bagnell concluded that Monroe's current proposal of another internal search was unacceptable and so "we will take this up with the Court."   Doc. #57-5.

---

"Managing Member of Datatrack Resources, LLC ("Datatrack")."   Doc. #70-1, ¶ 2.   The Court thus herein  refers to plaintiff's expert as "Datatrack," as opposed to "Data Trak."

[4]Plaintiff maintains that she offered this search by Datatrack as an alternative to filing the present motion to compel inspection of Marsh's computer records.   Doc. #57, p. 2.

4

## II.     PENDING MOTION

### A.     Plaintiff's motion to compel inspection

Plaintiff has moved pursuant to Federal Rule of Civil Procedure 45(c)(2)(B)[5] for an order compelling the inspection of electronic records in the possession of non-party Marsh, Journal Register's former insurance broker.[6] Doc. #56.  Plaintiff alleges that "[d]ue to irregularities and missing documents in [Marsh's] initial production response, Tucker and Marsh had previously agreed that Tucker could retain an independent forensic computer expert to examine a limited subset of Marsh's computer media."[7] *Id.*, p. 1.  Plaintiff explains that the "agreed upon purpose was to determine whether additional responsive electronic documents exist." *Id.* According to Tucker,

---

[5]Rule 45 (c)(2)(B), captioned "Objections" under "Protecting a Person under Subpoena," provides:

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
>
> (i) **At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection**.
>
> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Fed. R. Civ. P. 45(c)(2)(B)(i)-(ii) (emphasis added).

[6]In her motion, plaintiff refers to Marsh as a "third party" when, in fact, Marsh is not a party at all and would more accurately be described as a "non-party."

[7]As set forth *supra*, plaintiff ultimately retained Datatrack.  Doc. #57, p. 2.

however, Marsh allegedly "reneged on the agreement without explanation, and is now refusing to allow the inspection." *Id.* Through this motion, plaintiff seeks to obtain all Marsh "emails and correspondence regarding [her] claim." *Id.*, p. 1-2. Specifically, plaintiff requests the Court to compel Marsh to allow Datatrack to inspect Marsh's computer records, as set forth in her inspection protocol, and to "bear the costs of the inspection." *Id.*, p. 2.

In support of her motion, in addition to citing Rule 45(c)(2)(B), plaintiff argues that the Court has "inherent authority to compel the inspection of records under Rule 37(b).[8] Doc. #57, p. 3. Plaintiff asserts that "[i]t is well established that electronic records are discoverable under [Fed. R. Civ. P.] 34 as paper records." *Id.* (citing, *inter alia, Rowe Entertainment v. William Morris Agency*, 205 F.R.D. 4211, 428 (S.D.N.Y. 2002)). She further contends that "nearly one third of all electronically stored data is never printed out." Doc. #57, p. 3 (citing, *inter alia, Rowe Entertainment*, 205 F.R.D. at 428).

In relation to the requested records, plaintiff argues that "[u]pon receipt of a Rule 37 motion to compel, the Court has broad power to order production of any and all discovery that is "relevant to the claim or defense of any party." Doc. #57, p. 4 (quoting Fed. R. Civ. P. 26(b)(1)). The Court need only find "good cause" for the production, bearing in mind that discovery is "relevant" if it is even "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

---

[8]The Court finds Rule 37(b) to be inapposite to plaintiff's motion. That Rule pertains to a party's failure to comply with a court order and the sanctions a court may impose in that event. As of this date, Marsh has defied no Order by this Court.

In contrast, Fed. R. Civ. P. 37(a)(2)(B)(iv) may offer guidance in the case at bar, providing that a court may, upon motion, compel a discovery response if "a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34 [which includes the production of "electronically stored information"]."

Plaintiff clarifies that she believes that "good cause" exists for a further inspection of Marsh's computer records on the ground that such an inspection is "reasonably calculated to lead to the discovery of admissible evidence, and is also reasonably calculated to uncover the extent to which there has been spoliation of what would have otherwise been admissible evidence." Doc. #57, p. 5.

Plaintiff concludes that a motion to compel is appropriate in this case because Marsh's prior two sets of production "omitted a significant number of relevant communications . . . to Tucker's claim." *Id.* Furthermore, the documents produced "cease without explanation on April 24, 2007, despite a pending request from Journal Register Company's former Treasurer, Ricardo Venegas, for more information." *Id.* In plaintiff's opinion, "it defies credibility that Marsh did not provide a response to its client" on the pending claims at issue.[9] *Id.* Consequently, plaintiff seeks an order compelling Marsh to allow inspection of its computer records by Datatrack, with costs of the inspection to be borne by Marsh.

---

[9]In support, plaintiff sites *GTFM, Inc. v. Wal-Mart Stores*, *Inc.,* No. 98cv7724 (RPP), 2000 WL 335558 (S.D.N.Y. Mar. 30, 2000), describing it as a case with "similar facts" in which a district court not only compelled on-site inspection of computer records, but ordered costs to be borne by the party who failed to comply with discovery obligations. The court, however, finds the *GTFM* case easily distinguishable from the case at hand on its facts. First, the production request was directed at the defendant in the action, Wal-Mart. Second, the motion to compel followed Walmart's failure to comply with the court's previous order to produce the relevant records. Third, and perhaps most importantly, Walmart actually misrepresented its computer capacity to the court when questioned at a pretrial conference "about its inability to produce the records requested by plaintiffs" in light of its likely "sophistication" as a large corporation. 2000 WL 335558, at *2. Finally, by the time plaintiff learned about Walmart's misrepresentation, the information sought was "no longer available" and thus defendant had "benefitted from the delay." *Id.* at *3. Under those specific circumstances, and in light of "defendant's [poor] track record on compliance with [prior] discovery requests," the court imposed sanctions for failure to comply with its prior order under Fed. R. Civ. P. 37(b)(2). *Id.* Hoping to deter further discovery misconduct by Walmart, the court "ordered [it] to pay all plaintiffs' expenses and legal fees unnecessarily expended due to defendant's failure to make an accurate disclosure of its computer capabilities." *Id.*

### B.    Marsh's objection to inspection

Marsh objects to plaintiff's proposed inspection of its computer records, arguing that "Marsh has more than fully complied with any reasonable obligations that it might have as a non-party to respond to Tucker's Rule 45 subpoena."  Doc. #67, p. 3.  Marsh has indisputably turned over "several hundred" responsive documents pursuant to plaintiff's prior requests. Doc. #67, p. 5, Doc. #57, p. 1.  Because Marsh's prior searches "did not result in the discovery of a response by Marsh to an email inquiry by JRC as to whether the defendants were on notice of Tucker's case" and "[b]ecause [plaintiff] speculates that such an email ought to exist, Tucker now asks the Court to allow her essentially carte blanche access to rummage through Marsh's electronically stored information, purportedly in the hope that the needle she is looking for lurks somewhere in that haystack."  Doc. #67, p. 4.

Furthermore, Marsh, through its Senior Litigation Counsel, Steven Monroe, contests plaintiff's allegation that an agreement had been reached with Bagnell to allow inspection of its computer records.  Monroe states that he only agreed to "seriously consider" Bagnell's request for inspection of computer records and told Bagnell to send him a  "written proposal."  Doc. #67-6, ¶ 7.  In his affidavit, Monroe thus avers, "[t]o be clear, I never agreed to allow Mr. Bagnell to conduct his own search of Marsh's electronic records."  *Id.*, ¶ 11.

In sum, Marsh contests plaintiff's motion to compel further inspection on five grounds: (1) Tucker's original subpoena did not call for the production or inspection of what she now seeks, and a motion to compel is thus premature and unwarranted;[10] (2) the request is unduly burdensome and

---

[10]The text of plaintiff's original subpoena is set forth at Doc. #57-1.   The Court notes that plaintiff's present "inspection protocol," at Doc. #57-3, p. 2, contains items that are not listed in the original subpoena.  *Compare* Doc. #57-1 (Schedule A) *with,*  Doc. #57-3, p. 2.

overly broad;[11] (3) Tucker cannot show anything less than good faith in the electronic searches that Marsh has already performed and no further search is warranted; (4) Tucker is inappropriately utilizing third-party discovery to try to cobble together a new claim to drag Marsh into this case as a defendant; and (5) Tucker's request impermissibly and unnecessarily intrudes on the legitimate confidentiality interests of Marsh and its customers."[12]  *Id.*, p. 4.

## III.   <u>STANDARDS OF LAW</u>

### A.   <u>Rule 45</u>

Rule 45 of the Federal Rules of Civil Procedure permits parties to obtain information from non-parties through inspection and copying of documents the non-party is required to produce.  Rule

---

[11]Marsh states that "[w]ith respect to electronic media, Tucker wants to have her consultant given free access to the following:

> Desktop and/or laptop computers used by, assigned to or previously assigned to Lucy Carter in 2006 and 2007; all electronic store media, including, but not limited to, hard drives (internal and external), jump drives, other USB (Universal Series Bus) storage devices; Flash Memory cards, CDs (all types), DVDs, and Floppy disks; hard drives housed in servers that provide or provided storage for Ms. Carter's documents and/or E-mail communications related to her.

Doc. #67, p. 7 (quoting Tucker's proposal for inspection of Marsh's electronic records).

As described by Marsh, Tucker's proposed inspection also includes: "records (including emails) relating to the purchase, assignment, maintenance or other procedures performed on any computer or storage device used by Ms. Carter;" "company policies for data retention; for retention of ESI housed on all storage devices, including individual workstations and company servers; and for the backup of data files, including parameters for destruction;" and "details regarding the company's email communication systems, in particular those that would have been used for communicating with or about Ms. Carter."  Doc. #67, p.7.  *See also* Doc. #57-3, p. 2, for full text of plaintiff's inspection request.

[12]As set forth below,  the Court finds sufficient merit in Marsh's grounds numbered (2), (3), and (5) to deny plaintiff's motion to compel.  The Court does not, therefore,  address or decide upon the issues raised it numbers (1) and (4).

45 thus provides for the service of a subpoena to produce and "permit inspection, copying, testing, or sampling" of "designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii), (a)(1)(D). *See also* Fed. R. Civ. P. 34(c) ("[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things"). "A person commanded to produce documents or tangible things . . . may serve on the party or attorney designated in the subpoena a written objection. . . . At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection." Fed. R. Civ. P. 45(c)(2)(B)(i). However, the acts ordered pursuant to such an order to compel "may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Id.* 45(c)(2)(B)(ii).

### B.   <u>Rule 26(b)</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P.26(b)(1). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir.1991); *Morse/Diesel, Inc. Fidelity & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y.1988).

Pursuant to Rule 26(b)(2)(B), a party must provide discovery of electronically stored information unless that party shows that the source of such information is "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B).   Once the served party shows that a source of electronically stored information is not reasonably accessible, the requesting party may still obtain discovery by showing "good cause, considering the limitations of Rule 26(b)(2)(C)," which balance the costs and potential benefits of discovery. *Id.*   "The decision whether to require a responding party to search for and produce information that is not reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case."[13]   Fed. R. Civ. P. 26, Advisory Committee Note to the 2006 amendments to Rule 26(b)(2).

Under Rule 26(b)(2)(C), courts impose a proportionality test to weigh the interests of the parties to determine whether discovery, even if relevant, should be allowed to proceed.[14]   Thus,

---

[13]The Advisory Committee's Notes to the 2006 amendments to Rule 26(b)(2) specify that "[a]ppropriate considerations may include: (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources."

[14]Rule 26(b)(2)(C), captioned "Limitations on Frequency and Extext [of Discovery]. . . When Required," states:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

pursuant to Rule 26(b)(2)(C), the court may limit or deny discovery *sua sponte* or upon motion, when, for example, "such discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Similarly, the Court may limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* 26(b)(2)(C)(iii). *See also* 7 James Wm. Moore, et al., *Moore's Federal Practice* ¶¶ 33.173[3]-[4] (3d ed. 2004) (party may object to a relevant discovery request if it is "overly broad" or "unduly burdensome"); *accord* Charles A. Wright, Arthur R. Miller and Richard L. Marcus, 8A *Federal Practice & Procedure* § 2174, at 297 (2d ed.1994).

## C.    Non-parties and burden – balancing the interests of the parties

With respect to non-parties in particular, although "[t]he permissible scope of discovery from a non-party is generally the same as that applicable to discovery sought from parties[,] . . . [t]he burden on the party from which discovery is sought must, of course, be balanced against the need for the information sought." *Wells Fargo Bank, N.A. v. Konover*, No. 3:05CV1924 (CFD)(WIG), 2009 WL 585434, at *5 (D. Conn. Mar. 4, 2009) (applying balancing test of Rule 26(b)(2)(C) to

---

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

deny in part plaintiff's Rule 45 motion to compel production of documents from non-party).[15]    In performing such a balance, courts have considered the fact that discovery is being sought *from a third or non-party*, which weighs against permitting discovery.  *See, e.g., Medical Components, Inc. v. Classical Medical, Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C.2002) ("The current generally prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party, and that the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs.").[16] *See also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir.1993) ("Discovery of persons not party to the litigation is contemplated by the Rules. Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances.") (collecting cases).  Within this Circuit, courts have held  nonparty status to be a "significant" factor in determining whether discovery is unduly burdensome.  *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y.1988), *aff'd*, 870 F.2d 642 (2d Cir. 1989) ("Of significance, . . . in balancing the competing hardships, is the Society's status as a non-party to this litigation. Under the authorities, this factor is significant in 'determining whether compliance [with a discovery demand] would constitute an undue burden.'") (citations omitted).

---

[15] *See also  In re Publication Papers Antitrust Litigation*, No. 3:04 MD 1631(SRU), 2005 WL 1629633, at *2 (D. Conn. July 5, 2005); *Abu-Nassar v. Elders Futures, Inc*., No. 88 Civ. 7906 (PKL), 1991 WL 45062, at *17 (S.D.N.Y. Mar. 28, 1991).

[16] *See also In re Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir.1998) (collecting cases); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed.Cir.1993) (court may require discovery from a party before burdening a non-party); and *Echostar Communications Corp. v. News Corp., Ltd.*, 180 F.R.D. 391, 394 (D.Colo.1998) (status of being non-party is a factor in balancing competing needs)).

Furthermore, by its terms, Rule 45 (c)(2)(B)(ii) mandates that courts protect third parties

from onerous discovery requests.   That provision states that, when "the serving party . . . move[s]

the issuing court for an order compelling production or inspection" from a non-party, "[t]hese acts

may be required only as directed in the order, and the order *must protect a person who is neither a*

*party nor a party's officer from significant expense resulting from compliance*."  Fed. R. Civ. P.

45(c)(2)(B)(ii) (emphasis added).  Courts have relied on such language to protect non-parties from

"significant expense" arising from document production.  *See, e.g.*, *Jackson v. AFSCME Local 196*,

246 F.R.D. 410, 413  (D. Conn. 2007) (Hall, J.) (ordering plaintiff to pay expenses of non-party in

complying with discovery request to gather electronic records);  *Honda Lease Trust v. Middlesex*

*Mut. Assur. Co.*, No. 3:05CV1426(RNC), 2008 WL 349239, at *5 (D. Conn. Feb. 6, 2008)

(Chatigny, J.) (instructing third party witness to seek an agreement with plaintiff's counsel regarding

reasonable reimbursement of his expense, if "significant," in inspection and copying of documents

per plaintiff's discovery request; otherwise, "he may move for reimbursement of some or all of those

costs");  *Florida Software Systems, Inc. v. Columbia/HCA Healthcare Corp.*, No. 99-MC-0036E,

2002 WL 1020777 (W.D.N.Y., Feb. 25, 2002) (quoting Fed.R.Civ.P. 45(c)(2)(B)) ("[a]n  order

compelling production pursuant to a subpoena duces tecum  'shall protect any person who is not a

party or an officer of a party from significant expense resulting from the inspection and copying.'").

 In general, a "district court has broad discretion to direct and manage the pre-trial discovery

process," and its  discovery rulings are reviewed only "for abuse of discretion."  *Wills v. Amerada*

*Hess Corp*., 379 F.3d 32, 41 (2d Cir.2004).   "Ultimately, "[t]he determination of issues of burden

and reasonableness is committed to the sound discretion of the trial court." *Akande v. Graser*,  No.

3:08-cv-188(WWE), 2010 WL 3613912, at *1 (D. Conn. Sept. 3, 2010) (quoting  *Concord Boat*

14

*Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996)).  In particular, "what constitutes an

undue burden in a given instance is a case specific inquiry, 9A Wright & Miller, Civil 2d § 2449,

at 48 & nn. 32–33."  *Concord Boat Corp.*, 169 F. R. D. at 53.

## IV.   DISCUSSION

After reviewing both Tucker's and Marsh's arguments and cited authority, the Court herein

denies plaintiff's motion to compel for the reasons set forth below.

### A.   Plaintiff's request is overly broad

First, on its face, plaintiff's proffered inspection protocol is overly broad and thus exceeds

the bounds of permissible  discovery under Rule 26(b)(2)(C).   Plaintiff's requested inspection of

Marsh's computer records seeks access to records and information well beyond the parameters of

emails to and from Lucy Carter with respect to Tucker's claim.   In the actual inspection protocol

plaintiff submitted to Marsh, plaintiff requests to examine, *inter alia*, "[d]esktop and/or laptop

computers used by, assigned to or previously assigned to Lucy Carter in 2006 and 2007; all

electronic storage media, including, but not limited to, hard drives (internal and external), jump

drives, other USB (Universal Serial Bus) storage devices, Flash Memory cards, CDs (all types),

DVDs, and Floppy disks; hard drives housed in servers that provide or provided storage for Ms.

Carter's documents and/or E-mail communication related to her."  Doc. #57-3, p. 2, para. 1.

Plaintiff further requests to examine:  Marsh's "[r]ecords [including emails] relating to the purchase,

assignment, maintenance, and any other procedures performed on any computer or storage device

assigned or previously assigned to Ms. Carter;" "[c]ompany policy in effect for the retention of data,

documents and [e]-mail for the period 2006 through the present;" "[c]ompany policy as it relates to

the retention of electronic documents and [e]-mail housed on individual workstations, company servers and other storage devices during the period 2006 through the present;" "[c]ompany policy regarding the backup of data files, including [e]-mail for the period 2006 through the present . . . includ[ing] any parameters that may be in place for the destruction of these backup files;" and "[d]etails of the system[s] utilized by the company for sending, receiving an storing [e]-mail communications," including those used for communicating with and about Ms. Carter during her employment." *Id.*, paras. 2-6; *see also* Doc. #67, p. 7.

As set forth, *supra*, pursuant to Rule 26(b)(2)(C), the Court may limit or deny discovery *sua sponte* or upon motion, when, for example, "such discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ.  P. 26(b)(2)(C)(i).  Similarly, the Court may limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*, 26(b)(2)(C)(iii).. *See also* 7 James Wm. Moore, *et al.*, *Moore's Federal Practice* ¶¶ 33.173[3]-[4] (3d ed. 2004) (party may object to a relevant discovery request if it is "overly broad" or "unduly burdensome"); *accord* Charles A.Wright, Arthur R. Miller and Richard L. Marcus, 8A *Federal Practice & Procedure* § 2174, at 297 (2d ed.1994).  Rule 26(b)(2)(C) was clearly designed to allow a court to intervene and prevent an overly broad search request, such as that proposed by Tucker.

Despite the indisputably broad range of  plaintiff's request – seeking Marsh's computers, records, policies and system information –  plaintiff nonetheless argues that she seeks only "one former employee's electronic records." Doc. #70, p. 4.  The fact remains that Carter is no longer employed by Marsh and her electronic records remain lost and, at best, imaged among those of eighty-two other former employees.  Thus, even if plaintiff truly seeks only Carter's records, in

order to obtain those records, Marsh would have to either engage in or submit to an expansive search that would impose a "significant burden," as fully described by Marsh's Director of Information Management and Strategy, Allison Brecher,  in her affidavit.[17]  *See* Doc. #67-7, ¶¶ 7-11.

Furthermore, plaintiff's cite to *Ameriwood Industries, Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291 (E.D.Mo. Dec. 27, 2006), in support of what she terms her "limited inspection," is unpersuasive to the Court.  Doc. #70, p. 5.  Specifically, the Court disagrees with  plaintiff's assertion that "*Ameriwood* in fact involves *the exact same situation* presented here, *i.e.*, a responsive email was not produced by its author, but was obtained from a third party, a fact which justified inspection."  Doc. #70, p. 5 (emphasis added).  *Ameriwood* may be distinguished from the case at bar by two important facts.  First,  in *Ameriwood*, plaintiff requested the production of records from the defendants, as opposed to non-parties.   Second, the plaintiff in *Ameriwood* sued defendants for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Thus, not only were the parties who failed to produce the allegedly missing email the defendants in the action, they were also "alleged to have used the computers, which [were] the subject of the discovery request, to secrete and distribute plaintiff's confidential information."  2006 WL 3825291, at *5.  Use of the computer – "[h]ow and whether defendants handled those documents and what defendants did with the documents [were] certainly at issue" in the case.  *Id.*  In the present action, plaintiff seeks to impose an onerous  discovery burden on a non-party, against which she has no pending action for computer mis-use or  violation of any computer-related laws.

---

[17]As Marsh summarizes in its memorandum to the Court, "[b]ecause she speculates that such an email ought to exist, Tucker now asks the Court to allow her essentially carte blanche access ro rummage through Marsh's electronically stored information, purportedly in the hope that the needle she is looking for lurks somewhere in that haystack."  Doc. #67, p. 4.

Furthermore, in allowing the search to go forward in *Ameriwood*, the court set the explicit condition that *plaintiff* would incur the expense of obtaining the computer information sought:

> As plaintiff does not object to incurring the costs for the requested procedures and defendants do not perform these procedures in the regular course of their business, *plaintiff will incur the costs involved in creating the mirror images, recovering the information, and translating the information into searchable formats*, as described below.

*Id.* (emphasis added).  Here, plaintiff asks the Court to impose the expense of the requested search entirely upon non-party Marsh, including payment of her expert, Datatrack.  Doc. #56, p. 2 ("Tucker . . . requests that the Court order Marsh to bear the costs of the inspection").

### B.   Plaintiff seeks emails with speculative existence

Plaintiff concedes that she speculates, rather than knows of, the existence of the emails she seeks in her proposed inspection.  *See, e.g.*, Doc. #56 (plaintiff describes  the "agreed upon purpose [of plaintiff's requested inspection] was to determine whether additional responsive electronic documents exist").  Thus, in balancing the interests of the parties with respect to the discovery sought under Rule 26(b)(2), the *likelihood of finding the information* sought remains in doubt.

The crux of plaintiff's request for inspection is her unsubstantiated belief that Marsh, through Carter, must have responded to an email from JRC Treasurer Ricardo Venegas, in which he sought additional information about Tucker's claim.   *See* Doc. #57, p. 5 ("It defies credibility that Marsh did not provide a response to its client regarding two pending claims about which it had inquired"); *id.*,  p. 6 ("the omission of several relevant emails from Marsh's subpoena production is suspect"). In so stating, plaintiff fails to acknowledge that one can never truly predetermine another's actions. Despite habit, norms, or even rules, people often act, or fail to act, unpredictably.

Moreover, plaintiff takes her argument a step farther by suggesting that Marsh's failure to produce the hypothesized emails indicates that "spoliation" of "otherwise admissible evidence" may have occurred.   Doc. #57, p. 5.   In so stating, plaintiff fails to acknowledge that Marsh diligently performed two previous searches in response to her prior production requests, "ultimately producing several hundred pages of documents in two phases."[18] Doc. #67, p. 1.  *See also* Doc. #57-2 (Letter from Smart to Bagnell, dated 8/30/2012, stating, "Please be advised that Marsh conducted an additional review of its records as per your legal hold notice for its Journal Register/Tucker claim files" and "[e]nclosed, please find the additional records Marsh located per your request").  In light of Marsh's prior, thorough cooperation, the Court finds no merit in plaintiff's accusations, which impute improper motive to Marsh for failure to locate the alleged emails.[19]

Even assuming *arguendo* that additional emails between Carter and Venegas actually exist, the burdens of plaintiff's proposed inspection upon Marsh outweigh the benefits plaintiff might obtain were she to obtain the emails through a Datatrack inspection.  Plaintiff seeks to search, *inter alia*, the mirror images of eighty-three laptops – in effect, to dredge an ocean of Marsh's electronically stored information and records in an effort to capture a few elusive, perhaps non-

---

[18]In the case at bar, as detailed by Marsh counsel Monroe, Marsh has twice acted in "good faith" with respect to Tucker's previous requests for production.  Marsh performed two detailed and thorough searches for Tucker, restoring Ms. Carter's email profile for relevant periods and producing a back up tape, thereby turning over hundreds of documents to plaintiff.  Doc. #67-6, ¶ 5.  Such comprehensive productions by a non-party evidence neither evasiveness nor lack of cooperation.

[19]*See, e.g.*, Doc. #80, p. 1-2 (Marsh "very suspiciously, admits that it has 'no explanation' why it cannot locate the image of Carter's laptop computer).

existent, fish.[20]   In the absence of proven necessity, courts are traditionally loathe to permit such

sweeping fishing expeditions.  *See Wells Fargo Bank, N.A. v. Konover*, 2009 WL 585434, at *4-5

(D. Conn. 2009) (party moving to compel must make *prima facie* showing that discovery sought is

more than fishing expedition).

### C.    Plaintiff has previously engaged in alternative, duplicative discovery on the issues of notice to defendant insurers and/or claims handling

Even if a document or record sought  is otherwise "relevant" for purposes of discovery under

Rule 26(b) of the Federal Rules of Civil Procedure, a court must limit discovery thereof if it "is

unreasonably cumulative or duplicative, or can be obtained from some other source that is more

convenient, less burdensome, or less expensive. " Fed. R. Civ. P. 26(b)(2)(C).  In the case at bar,

plaintiff has obtained extensive discovery on her claims from other sources.  She has made

production requests and taken multiple depositions of defendants' witnesses, yielding information

on the central issues of notice of her claim to defendant insurers and the handling of said claim.

Furthermore, as to the specific emails she seeks (*i.e.*, those pertaining to Carter), plaintiff concedes

that "Tucker had independently obtained several of these emails after subpoenaing Journal Register

Company."  Doc. #57, p. 1.  Thus, she acknowledges that alternative means of discovery have

already yielded success in this matter.

---

[20]The Court further notes that  the scope of Tucker's proposed inspection of Marsh's
record indeed goes beyond the scope of her original subpoena, seeking information about
records, policies and system information that were not the subject of that subpoena.   Thus, as
Marsh points out, plaintiff's current motion to compel is arguably "not ripe" in that there must
first be a formal discovery request and a failure to respond before a motion to compel is
appropriate.  Doc. #67, p. 8 (citing *Rhea v. Uhry*, No. 3:05cv189 (RNC), 2006 U.S. Dist. LEXIS
74917, at *1-2 (D. Conn. Oct. 16, 2006).   Tucker has issued no formal subpoena for much of
the information she now seeks to obtain via her pending motion to compel.

"While courts interpret liberally the discovery provisions of the Federal Rules of Civil Procedure to encourage the free flow of information among litigants, limits do exist." *Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D.Conn. 2005).  Because plaintiff has engaged in extensive,  alternative, duplicative, and likely less burdensome, discovery with respect to defendants and Journal Register,   absent a showing that plaintiff either cannot obtain  – or in fact *has not* obtained – ample discovery on the essential  elements of her claim, the Court will refrain from ordering yet another broad and costly search of Marsh's computer records and policies in search of  emails which may not exist.[21]

### D.   Marsh is a non-party to the action and would endure significant burden if the proposed inspection were performed

Lastly,  Marsh is not a party in this case and would be subjected to significant burden and expense in the event of  the requested inspection.  These are significant factors.   Marsh is neither the plaintiff, who has come to court seeking recovery, nor one of the defendant insurers, who are alleged to have engaged in  wrongdoing (*e.g.*, unfair claims handling).[22]  Despite its non-party status,

---

[21]Also, as stated *supra*, when the burden of discovery is at issue, courts generally approve direct discovery from a party over discovery from a non-party. *See Medical Components, Inc. v. Classic Medical, Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C. 2002).

[22]Marsh, as a non-party, has no legal "dog" in plaintiff's fight with defendants.   As a broker, Marsh simply acted as agent or  "go-between" for plaintiff's prior employer in obtaining insurance from the defendant insurers in this action.   As set forth *supra* at section III.C.  herein, the "factor [of non-party status] is significant in determining whether compliance [with a discovery demand] would constitute an undue burden." *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y.1988) (collecting cases).  *Accord U.S. v. IBM Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979) ( non-party status entitles party served with discovery request "to consideration regarding expense and inconvenience"); *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir.1993).  *See also Wells Fargo Bank, N.A. v. Konover*, No. 3:05CV1924 (CFD)(WIG), 2009 WL 585434, at *5 (D. Conn. Mar. 4, 2009); *Medical Components, Inc. v. Classical Medical, Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C.2002); *Echostar*

Marsh has in apparent good faith, and with seeming due diligence, cooperated with Tucker's prior two discovery requests, voluntarily restoring a set of backup tapes and producing hundreds of documents.  Doc. #67, p. 1, 20.  It is only at present, in response to Tucker's third and yet more expansive search by an outside firm, that Marsh has finally objected.

Marsh, through the sworn affidavit of its Director of Information Management and Strategy, Allison Brecher, has established that Marsh would face a "significant burden" if ordered to comply with plaintiff's current requested inspection.  Doc. #67-7 (Brecher Affidavit), ¶ 11.  As explained by Brecher, Carter's position with Marsh was one of eighty-three eliminated in 2008.  *Id.*, ¶ 7. During her employment, Carter had access to a PC, an assigned laptop and a Blackberry. *Id.*, ¶ 3.  By the time Tucker served Marsh with her subpoena, the computer assigned to Carter was no longer in Marsh's possession.  *Id.*, ¶¶ 4, 6.  Per company policy, upon termination of her employment, Carter's equipment was wiped and re-imaged/re-installed so that it could be re-deployed to another employee or disposed of when no longer useful for business purposes.  *Id.*, ¶ 4.  When Carter was terminated in August of 2008, her laptop was delivered to Marsh's IT Department to be mirror imaged and that image was to be assigned a "service desk ticket" of 4902508.[23]  *Id.*, ¶ 6.  Despite "a search for the image of Ms. Carter's computer" by Marsh's Information Technology Department, Marsh was unable to locate that mirror image.[24]  *Id*.  Because Carter's computer is one of eighty-

---

*Communications v. The News Corp., Ltd* ., 180 F.R.D. 391, 394 (D. Colo.1998).

[23]"A mirror image is an exact duplicate of the entire hard drive, and includes all the scattered clusters of the active and deleted files and the slack and free space." *U.S. v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 48 (D. Conn. 2002).

[24]According to Brecher, Marsh also performed searches on the personal drive, "p:\drive," and the shared network drive, "s:\drive," to locate documents related to Carter and JRC.  Marsh determined that the "p:\drive" did not contain any documents stored by Carter.  Doc. #67-7, ¶ 8.

three processed at the time of a force reduction, all eighty-three images would have to be restored and analyzed in the hopes of finding the mirror image of Carter's laptop.  *Id.*, ¶ 7.  A new server would have to be built so that  all eighty-three images could be moved to it.  *Id.*  This would take approximately two to three weeks and would impose significant burden on Marsh.  *Id.*

In addition to any business disruption Marsh might endure, Marsh would also face "a host of confidentiality concerns."   Doc. #67, p. 21.  If Tucker's expert  were to review and copy its computer hard drives, plaintiff would gain improper access to Marsh's proprietary business information as well as information regarding Marsh's clients for whom Marsh acts as a broker.  Plaintiff would also have access to information protected by the attorney-client privilege.  The only means of preventing such inappropriate disclosure would be for Marsh to have counsel present to

---

Searching the shared network or "s:\drive" for both the client code for the relevant account and for the name "Journal Register" similarly yielded no documents.  *Id.*, ¶ 9.  Moreover, "[a]ny further search "to determine whether Ms. Carter used the  s:\drive for Journal Register documents would require restoring backup tapes, indexing the contents and conducting searches for each month of her employment (November 2003 - August 2008), approximately fifty-eight sets of backup tapes.  *Id.*, ¶¶ 9-10.  Such a search would consume "many weeks" and Marsh has neither "the equipment [n]or the personnel to handle such a search without suffering significant harm to its business operations."  *Id.*,  ¶¶ 10-12.  Marsh "could not put [its] daily backup and file and restore requests on hold in order to restore backup tapes of Ms. Carter's file server" without "thwart[ing] disaster recovery and business continuity processes."  *Id.*, ¶ 11.  Furthermore, due to Marsh's limited network bandwidth, to engage in a further "s:\drive" search, Marsh would be forced to "appropriate much more equipment and staff or utilize a third party service."  *Id.*   As Brecher described:

> Restoring such a large number of tapes would also strain our network bandwidth. We can currently index on average, approximately 2 gigabytes per hour on a single machine; in order to efficiently index and search multiple sets of backup tapes that could contain as much as 2 terabytes [*i.e.*, 2 trillion bytes or  2000 gigabytes] of data, we would need to appropriate much more equipment and staff or utilize a third party service.

*Id.*

23

review each document before allowing plaintiff's expert to view it – a procedure engendering what Marsh describes as a "huge, unnecessary expense." *Id.* That expense would greatly expand were Marsh to then have to compose a privilege log to protect such documents. *Id.* Even if plaintiff were required to pay Datatrack to perform the proposed inspection, Marsh would necessarily bear the hefty expense involved in protecting confidential documents from disclosure.[25]

Courts have acknowledged that inspection or testing of certain types of electronically stored information may raise issues of confidentiality or privacy. *See, e.g., Ameriwood*, 2006 WL 3825291, at *2; *see also John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008) ("the mere imaging of the media, in and of itself, raises privacy and confidentiality concerns" and "[d]uplication, by its very nature, increases the risk of improper exposure, whether purposeful or inadvertent"); *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3 (D.Kan. Mar. 24, 2006) ("Courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are . . . unsubstantiated in nature.").[26]

Plaintiff's hired Datatrack expert, Dorran Delay, attempts to contradict the sworn statements of Marsh Director Brecher regarding the size of the burden Marsh would endure in the proposed

---

[25]Even if plaintiff were to sign an inspection protocol agreement with Marsh, "protect[ing] privileged communications by allowing the assertion of attorney-client privilege before the requesting party reviews any found records," Doc. #70, p. 2, given the scope of the intended search, the implementation of the required procedures would remain both arduous and burdensome.

[26]*See also In re Ford Motor Co.*, 345 F.3d 1315, 1316-17 (11th Cir.2003) (Rule 34(a) does not give the requesting party the right to search through all of the responding party's records – *i.e.*, "does not give the requesting party the right to conduct the actual search").

inspection.   Delay postulates that "it would seem" that the service ticket for Carter's laptop computer or "some other documentation would provide that valuable location information" about Carter's records.   Doc. #70-1 (Affidavit of Dorran Delay, Managing Member of Datatrack Resources), ¶ 12.   Delay disregards Brecher's assertion that Marsh's  IT Department has already searched for the image of Carter's laptop using the designated service desk ticket number and was unable to locate it.  Doc. #67-7, ¶¶ 2, 6.  Delay thus ignores the problem that the  service desk ticket does not correspond with the laptop, leaving Marsh with the prospect of an extensive search which might ultimately prove fruitless.

Similarly, Delay questions, without being privy to Marsh's IT capabilities, Brecher's credibility  in suggesting that Marsh "would need to add staff and buy more equipment and utilize a third party to process" the data requested, in light of the size of Marsh's operation.  Doc. #70-1, ¶ 16.  In reaching this conclusion, Delay discounts Brecher's firsthand knowledge of Marsh's computer systems, equipment, and employee roster.   Put simply, Delay's comments, based on conjecture rather than fact, provide the Court with no evidentiary assistance.

### E.   Balancing the interests of the parties

Courts are obliged to recognize that non-parties should be protected with respect to significant expense and burden of compelled inspections under Fed. R. Civ. P. 45(c)(2)(B)(ii).  That Rule explicitly  provides that an order compelling inspection must "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Fed. R. Civ. P. 45(c)(2)(B)((ii).

Moreover, courts have focused on the importance of the Rule 26(b)(2)(C) proportionality

25

limit to implement fair and efficient operation of discovery. *See, e.g., Zubulake v. UBS Warburg*, 216 F.R.D. 280, 283-84 (S.D.N.Y. 2003).   Thus "whether to require a responding party to search for and produce information that is not reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case." *Barrera v. Boughton*, No. 3:07cv1436(RNC), 2010 WL 3926070. at *3 (D. Conn. Sept. 30, 2010)(citing Fed. R. Civ. P. 26, Advisory Committee Note to the 2006 Amendments to Rule 26(b)(2)).

Balancing the prospective burden to Marsh against the likely benefit to plaintiff from the proposed inspection, the Court concludes that the circumstances do not warrant compelling Marsh to endure inspection of its computer records by Datatrack.  First, Marsh, through the sworn testimony of its Director of IT Management and Strategy, Brecher, has established the "significant expense" Marsh  would endure should Datatrack perform the proposed search.  Doc. #67-7, ¶¶ 7-11.  Such expense would include the need to obtain additional equipment and staff to restore the records sought and attorneys to be present to prevent disclosure of confidential records.  It is incumbent upon courts to protect non-parties from significant expense when considering motions to compel.  Fed. R. Civ. P. 45(c)(2)(B)(ii).

Second, plaintiff's requested inspection is overly broad, seeking computers, electronically stored media, information, records, and policies well in excess of the Carter-related emails she allegedly seeks.  The requested inspection thus, in any event, exceeds the boundaries of permissible discovery under Rule 26(b)(2)(C).   *Id.* 26(b)(2)(C)(i), (iii).

Third,  discovery on the issues relevant to Tucker's claim (*e.g.*, notice of claim to defendants and/or claims handling) has been ongoing between plaintiff and defendants for years.  Discovery on

the topics thought to be contained in the "missing" Carter emails is thus unnecessary in that it is both "cumulative or duplicative," and "can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* 26(b)(2)(C)(i).   Moreover, in various depositions of Journal Register and defendants' witnesses, plaintiff has been afforded "ample opportunity to obtain the information [sought] by discovery in the action." *Id*. 26(b)(2)(C)(ii).  Such prior discovery, in conjunction with the speculative existence of additional Carter-related emails, leads the Court to conclude that "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* 26(b)(2)(C)(iii).

Lastly,  plaintiff has failed to establish  "good cause" to compel inspection of Marsh's records for emails that  are  not "reasonably accessible" and of questionable existence.[27]  *See id.* 26(b)(2)(B).  Specifically, plaintiff failed to prove that the information she believes is contained in such emails is essential and/or relevant and unobtainable from other sources.  Rather, she concedes that she already "had independently obtained several of these [Carter-related] emails after subpoenaing Journal Register Company."  Doc. #57, p. 1.

In sum, the Court concludes that, given plaintiff's extensive discovery in this action and the

_____

[27]Also, applying the recommended factors set forth in the Advisory Committee's Notes to the 2006 Amendments to Rule 26(b)(2), the Court finds: (1) plaintiff's request lacks specificity – *i.e*., is overly broad, seeking information, policies and records beyond the emails she claims to seek; (2) information on the issues allegedly contained in the hypothesized emails may be and most likely has been, obtained from other sources, defendants and/or JRC; (3) information on the issues of notice and claims handling is and was available to plaintiff prior to her request to inspect Marsh's records; (4) the likelihood of finding the speculative emails remains in doubt; and (5) due to their conjectural existence, the benefit/usefulness of these emails remains speculative.  *See* n. 13 herein, *supra*.  Moreover, the cost of the requested inspection would be "significant" to Marsh, which is a non-party; and  imposing that cost on Marsh would provide plaintiff without incentive to limit her intended search.  *See, e.g., Barrera*, 2010 WL 3926070, at *3*; Zubulake*, 216 F.R.D. at 284*; Wells Fargo Bank, N.A.*, 2009 WL 585434, at *5.

uncertain existence of the emails sought, the likely benefits plaintiff might derive from the requested search are outweighed by the substantial burden and expense such a search would impose on non-party Marsh.  Fed. R. Civ. P. 26(b)(2)(B), (C).   Marsh has cooperated in response to two prior discovery requests and should not be subjected to the "significant expense" that would result from complying with a Datatrack inspection.  *See id.* 45(c)(2)(B)(ii).

## V.   **CONCLUSION**

For the foregoing reasons, plaintiff's motion to compel inspection of non-party Marsh's computer records (Doc. #56) is DENIED.  The Court recognizes that it has inherent authority to compel inspection of non-party Marsh's electronic records under Rules 45, 34, and 37 of the Federal Rules of Civil Procedure.[28]  The Court also, however, is cognizant of its duty to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance," Fed. R. Civ. P.  45(c)(2)(B)(ii), and, in general,  to limit or prevent disclosure of "electronically stored information from sources [a] party identifies as not reasonably accessible because of undue

---

[28]Rule 45, captioned "Subpoena," requires that a subpoena  "command each person to whom it is directed to do the following at a specified time and place: . . .  produce designated documents [and] electronically stored information."  Fed. R. Civ. P. 45(a)(1)(A)(iii).

Rule 34(c) states that, "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."  Fed. R. Civ. P. 34(c).

Rule 37, regarding motions to compel disclosure, provides in relevant part:

A party seeking discovery may move for an order compelling an answer, designation, production, or *inspection*. This motion may be made if:
. . . .
(iv) a party fails to respond that inspection will be permitted—or fails to *permit inspection* — as requested under Rule 34.

Fed. R. Civ. P. 37 (a)(3)(B)(iv) (emphasis added).

burden or cost," *id*. 45(b)(2)(B).   The Court must also impose limits upon discovery that is overly broad or which would result in a burden or expense that outweighs its likely benefit   *Id.* 26(b)(2)(C)(i)-(iii).

Under the present circumstances, the Court finds that the costs imposed by compelling inspection would outweigh the movant's asserted interest in gaining access to speculative emails. Put simply, plaintiff's proffered need to have Datatrack perform an expansive inspection of Marsh's computer records for possible Carter-related emails is clearly outweighed by the substantial burden that inspection would impose on non-party Marsh (*i.e.*, business disruption from use of its computer equipment, need to acquire additional equipment, and inadequate staffing of both IT employees and legal counsel to supervise and prevent the copying of confidential documents).   *See* Fed. R. Civ. P. 26(b)(2)(B)-(C).   Plaintiff concedes that she seeks emails with uncertain existence and Marsh, by affidavit of Brecher, has proven the extent and nature of its prospective burden.

The Court further notes that plaintiff has previously obtained ample and extensive discovery on the issues relevant to her action from the defendant insurers and her former employer.   Thus, pursuant to Federal Rule of 26(b)(2)(C), plaintiff's request for inspection is deemed both "cumulative or duplicative," to her prior discovery efforts and "can be [or most likely was] obtained from some other source that is [or was] more convenient, less burdensome, or less expensive," especially from defendants. *Id.* 26(b)(2)(C)(i), (ii).   Similarly, plaintiff lacks "good cause" to pursue her requested inspection of Marsh's electronically stored information for emails that are speculative in nature, would be arduous to access, and whose alleged content has been discoverable from defendants throughout this action. *Id.* 26(b)(2)(B).

Alternatively, due to the aforesaid substantial burden to Marsh, plaintiff's request for

inspection is denied pursuant to Fed. R. Civ. P. 45 as likely to impose "significant expense" on a non-party to this action.  *Id.* 45 (c)(2)(B)(ii).

Despite its non-party status, Marsh has diligently and in good faith complied with plaintiff's prior discovery  requests, twice searching its computer records and producing hundreds of documents.   There is no thus impetus to sanction or deter Marsh regarding any discovery misconduct.

Finally, the Court DENIES plaintiff's request for costs in retaining her expert, Datatrack. Based on the parties' submissions, the Court finds no persuasive evidence that plaintiff's counsel reached a firm agreement with Marsh's counsel that Datatrack would be allowed to perform the requested search.   Rather, counsel for both sides addressed what they termed a "proposal" or "inspection protocol" for a possible search.[29]   "Proposal" by definition is "[s]omething offered for consideration or acceptance, " Black's Law Dictionary (9th ed. 2009)); and  a "protocol" is merely "[a] summary of a document," *id.*, generally a draft of said document before it is ratified.   Neither term implies the creation of a  final, binding agreement.

Furthermore, the Court notes that "when non-parties are forced to pay the costs of discovery, the requesting party has no incentive to deter it from engaging in fishing expeditions for marginally relevant material." *Jackson v. AFSCME Local 196*, 246 F.R.D. 410, 413 (D. Conn. 2007) (quoting *Linder v. Calero-Portocarrero*, 183 F.R.D. 314, 322-23 (D.D.C.1998)).

---

[29]*See, e.g.*, Doc. #57-5 (email from Bagnell to Monroe, stating "You asked for an inspection protocol and we forwarded one to you"); Doc. #67-6, ¶ 7 (Monroe affidavit, stating, "In that August [2010] Phone Call Mr. Bagnell suggested that a further electronic search should be conducted by his forensic expert.  I replied that Marsh would seriously consider his suggestion and that he should sent me a written proposal.").

Accordingly, plaintiff's "Motion to Compel Inspection of Third Party Marsh USA, Inc.'s Computer Records" (Doc. #56), including her request for costs of retaining her expert, is DENIED.

It is SO ORDERED.

Dated: New Haven, Connecticut
        March 15, 2012

                                        /s/Charles S. Haight, Jr.
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge

31