# EXHIBIT H

LAW OFFICE OF STEPHEN P. HORNER
PRACTICE IN THE AREA OF EMPLOYMENT AND LABOR LAW
2183 Boston Post Road
Darien, Connecticut 06820
www.hornerlaw.com

Phone (203) 655-7905
Fax (203) 656-1075

STEPHEN P. HORNER   shorner@sphorner.com
ALSO ADMITTED IN NY

By regular mail and Email: kwalsh@journalregister.com

November 3, 2003

Mr. Kevin Walsh
Publisher
New Haven Register
40 Sargent Drive
New Haven, CT 06511

Re:   Ms. Teri Tucker

Dear Mr. Walsh:

Please be advised that I represent the above referenced client with regard to the issues raised in this letter.

I have met with my client regarding the circumstances leading up to her recent discharge and am of the opinion that such discharge was in violation of the law. I believe that she has the following claims that she can pursue:

1.   The state (Connecticut General Statutes 46a-60) and federal (Title VII of the Civil Rights Act of 1965) discrimination laws with regard to retaliation against an employee for her opposing discrimination; and

2.   A wrongful discharge of her in violation of an important public policy; namely, firing an employee to keep her from offering testimony that would support a Complainant's Complaint of sexual harassment against one's former company.

With regard to her claim of retaliation, the evidence supporting such claimed violation includes the following:

1.   For the last three years, she has performed well for your Company and received salary increases in recognition of such good job performance.

JRC-00342

November 3, 2003
Page 2

2.      As the Telemarketing Manager, she was the Company's lead witness in

defending against a current CHRO sex harassment complaint by a former employee in the telemarketing department, Ms. Denise Pecoraro, against Mr. Lee Abrams. Mr. Abrams was one of two supervisors reporting to my client in the Telemarketing department.

3.      Ms. Tucker had also assisted the Company in preparing its Answer to the CHRO Complaint and in preparing exhibits for such Answer.

4.      During the summer of 2003, Ms. Tucker discovered the following revelations about Mr. Abrams:

        a.      That he has a criminal record...as had been alleged in the CHRO Complaint against him.

        b.      That another subordinate of her's also complained about Mr. Abrams sexually harassing her.

        c.      That Ms. Tucker heard sexually harassing comments from Mr. Abrams herself.

        d.      That Ms. Tucker had observed Mr. Abrams making sexually lewd gestures towards another member of the Company's management.

5.      As a result of such revelations, my client did the following:

        a.      She reported such new information to Mr. Robert Lee, the Company's HR manager. Mr. Lee told her that the criminal records were too old to be considered...notwithstanding that they were from 1999. He told her "...we don't want to deal with his criminal record."

        In response to my client having advised Mr. Lee of the additional sexual harassment complaint against Mr. Abrams, Mr. Lee angrily, and very strongly, stated to her that "This would not look good for us with the CHRO case."

        Mr. Lee also did not appear to be disturbed by the fact that Mr. Abrams had failed to include on his resume the name of the Company where he was working when the criminal charges were filed against him.

        b.      Although she did not say that she would not testify at the CHRO fact finding conference scheduled for next week, she told Mr. Lee that her heart wasn't in defending against the sex harassment claims because of the recent revelations.

JRC-00343

November 3, 2003
Page 3

Mr. Lee's response was that she had better just get her heart in it.

c.    She placed three memos in Mr. Abram's personnel file, dated April 17, 2003, July 28, 2003 and September 19, 2003. Such memos dealt with his poor performance as well as additional examples of his having engaged in sexually offensive conduct in the work place.

d.    She provided such memos and the criminal record documents to her superior, Mr. Rick Brest. He provided such documents to yourself. Approximately two days later, you fired my client. Such close timing between her actions and your firing her provide the nexus between her protected activity and her being fired; i.e., a violation of the retaliation provision of the state and federal laws.

6.    Your alleged termination reason, misuse of the telephone regarding collect calls that had occurred many months, if not years earlier, is clearly pretextual. Especially when my client did not have exclusive use of her telephone, denied any involvement in accepting collect calls, and was given no progressive discipline regarding such alleged violation.

Such outrageous and pretextual act of discharging my client because her testimony would not help the Company's defense also constitutes a wrongful discharge since public policy does not countenance such impact on complaints of discrimination and free speech.

Your company's financial exposure for such violations includes the following:

a.    reinstatement of my client, or front pay;

b.    payment of all lost back wages to my client;

c.    reimbursement for lost fringe benefits;

d.    payment of my client's attorney's fees; and

e.    punitive damages.

If you have any interest in resolving my client's claims at this time, please contact me within two weeks of the date of this letter. If we are unable to resolve this matter, my client has authorized me to file administrative complaints with CHRO and EEOC.

In exchange for a severance package, my client would, of course, provide a full release of liability and agree to maintain the terms of the agreement as fully

JRC-00344

November 3, 2003
Page 4

confidential.

Very truly yours,

Stephen P. Horner

JRC-00345